Kyle E. Bastian [ISB No. 10059]
WRIGHT BROTHERS LAW OFFICE, PLLC
1440 Blue Lakes Blvd. N., Suite A
P.O. Box 5678
Twin Falls, ID 83303-5678
Telephone No. (208) 733-3107
Fax No. (208) 733-1669
E-mail: kbastian@wrightbrotherslaw.com

*Attorneys for Scott Pilling, Sawtooth Industrial, LLC, IIOVIII Precision, LLC, and Intermountain Living, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>BREK PILLING, an individual; SCOTT PILLING, an individual; KODIAK AMERICA, LLC, a Delaware limited liability company; KODIAK NORTHWEST, INC., and Idaho Corporation; BAUB LLC, an Idaho limited liability company; PFT ENVIRO INVESTMENTS, LLC, an Idaho limited liability company; BUDGET TRUCK CENTER, LLC, an Idaho limited liability company; SAWTOOTH INDUSTRIAL, LLC, an Idaho limited liability company; IIOVIII PRECISION, LLC, an Idaho limited liability company; INTERMOUNTAIN LIVING, LLC, and Idaho limited liability company; BREK PILLING AS TRUSTEE OF THE PILLING FAMILY TRUST, an Idaho Trust; ARTHUR SADAMPI YAMADA, an individual; GARY WICKERSHAM, an individual; CAROLYN SHOEMAKER, and individual; LURENE DILLE, an individual; | Case No. 4:24-cv-00112-DCN<br><br>**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION** |

DOE DEFENDANTS I-XX; and ROE
ENTITY DEFENDANTS I-XX,

       Defendants.

---

SCOTT PILLING, an individual,

       Counterclaimant,

vs.

SRM-KODIAK AMERICA, LLC, an Idaho
limited liability company,

       Counterdefendant.

---

BREK PILLING, an individual; KODIAK
AMERICA, LLC, a Delaware limited
liability company; and PFT ENVIRO
INVESTMENTS, LLC, an Idaho limited
liability company,

       Counterclaimants,

vs.

SRM-KODIAK AMERICA, LLC, an Idaho
limited liability company,

       Counterdefendant.

I, Scott Pilling, hereby declare as follows:

1)      My name is Scott Pilling. I have personal knowledge of the factual information in this declaration. I am competent to testify regarding such information.

2)      I am the owner and President of Sawtooth Industrial LLC ("Sawtooth"), IIOVIII Precision LLC ("IIOVIII"), and Intermountain Living LLC ("IML").

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 2**

3)    I formed IML in September 2019. My father, Brek Pilling, was initially a

member and minority shareholder of IML. On or about September 21, 2021, Brek transferred his

minority interest in IML, ceased being a member, and has had no involvement since.

4)    Prior to September 29, 2021, I was an independent contractor of Kodiak America,

LLC.

5)    On or about September 29, 2021, SRM-Kodiak America, LLC ("SRM")

purchased Kodiak America, LLC's assets. Although I did not see the asset purchase agreement

and was not aware of all the particulars, I was aware that SRM was required to vacate the facility

located at 50 East Ellis Street in Paul, Idaho (the "Paul Facility") and remove all items SRM

desired by January 31, 2022. At some point, I believe that deadline was extended through March

31, 2022.

6)    As of September 29, 2021, numerous old drawings, schematic prints, and floppy

discs of Kodiak Northwest, Inc. and Idaho Norland Corporation, as well as many miscellaneous

parts, were strewn throughout the shop at the Paul Facility.

7)    After SRM purchased Kodiak America, LLC's assets, SRM management was

made aware on multiple occasions that there were numerous drawings, prints, and floppy discs,

as well as miscellaneous parts, at the Paul Facility. SRM had every opportunity to remove those

items from the Paul Facility but declined to do so.

8)    SRM CEO Grant Flaherty consistently told me and others that SRM had no

interest in removing and would not support drawings, prints, or parts over ten (10) years old from

the Paul Facility because SRM was going to sell "new machines."

9)    On or about August 1, 2022, I signed an Independent Contractor Agreement

provided by SRM. However, to date, I have never seen a fully signed version of this document.

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S
MOTION FOR PRELIMINARY INJUNCTION – 3**

10)     The Independent Contractor Agreement identifies me as both an independent contractor and the President of SRM.  In reality, I was a glorified sales and service representative without any real authority.  Multiple SRM board members told me I held a "monarch" position that was just for show.

11)     Nevertheless, I was expected to act as the face of the company.  I spent a significant amount of time traveling for sales and service visits and interacting with customers face to face.

12)     Because I needed access to large work files on the road and SRM was still working on a remote desktop access solution, I sought and obtained approval from SRM CEO Grant Flaherty to use my personal accounts, including without limitation my personal iCloud account, to store work files. SRM was certainly aware of and consented to this arrangement.

13)     After SRM hired Trevor Rice as SRM's Information Technology Manager, I still lacked remote desktop access and spoke with Trevor to address that issue.  Trevor indicated he was working on a permanent solution.  Trevor sometimes accessed my SRM-issued laptop to perform troubleshooting.  I personally observed him perform mass deletions of files when doing so.  I also deleted emails and other files from my laptop on a regular basis to keep things organized and free up space.

14)     In or about late 2022, I received an email from Gagandeep Singh Rupaal, a representative of Elecon Group of Companies in India ("Elecon").  I began exchanging emails with Elecon regarding potential arrangements and opportunities involving multiple industries, including snow removal and drilling, using my SRM email address.  At the time, I was experiencing some issues with all of my sales emails being sent to my junk folder and emailed Trevor Rice about this issue.  Attached hereto as **Exhibit 1** is a true and correct copy of such

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 4**

email correspondence dated December 28, 2022.  Trevor indicated he was working on a solution.

It took SRM's IT Department quite a while to resolve that issue, so I started using my personal

email account to communicate with Elecon.  Shortly after I started using my personal email

account, SRM's board advised me that Brian Tibbets was in charge of international affairs, that

SRM's dealer in India had indicated it would handle its own manufacturing, and that SRM had

no interest in pursuing a partnership with Elecon.  I continued to keep in touch with Elecon

regarding opportunities unrelated to snow removal and as a potential backup plan for SRM

before my departure from SRM.  After leaving SRM, I continued to communicate with Elecon

by email and, in February 2024, I visited Elecon in India on behalf of Sawtooth to discuss

potential arrangements and opportunities in India and beyond.  To date, such discussions have

been hypothetical in nature, no contract or agreement has been executed, and no work has been

performed by Sawtooth or Elecon.

15)    To date, I have neither provided nor used any confidential proprietary information

or data of SRM in my communications with Elecon.  Attached hereto as **Exhibit 2** is a true and

correct copy of email correspondence and an attachment I received from Elecon on or about

March 13, 2024, which confirms the same.

16)    In early 2023, I grew increasingly frustrated and dismayed with SRM's direction,

declining product quality, and poor customer service.  I observed this firsthand as I interacted

with customers of SRM in the field on a daily basis.

17)    Around that time, I had been exploring several potential new ventures in other

industries, including mobile hydraulics and drilling rigs manufacturing.  I initially formed

Sawtooth and IIOVIII in April 2023 in connection with those efforts.

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 5**

18)     I initially intended for Sawtooth to operate a mobile hydraulics service.  Arthur Yamada was initially a minority shareholder and member of Sawtooth who provided consulting services on an as-needed basis.  On or about July 20, 2023, however, Aruthur transferred his minority interest to me and has not been involved since.

19)     I initially intended for IIOVIII to manufacture drilling rigs.  Ultimately, that did not pan out because IIOVIII's distributor backed out of the project after SRM board member John Stokes advised IIOVIII's distributor not to do business with the Pillings.  Aurthur Yamada was initially a member of IIOVIII who provided consulting services on an as-needed basis for business development.  Shortly after IIOVIII's formation, however, Arthur removed himself from IIOVIII and has not been involved since.

20)     In or about April 2023, I submitted three bids to a potential customer, FAA Vancouver, which had requested both new and used snow blower options.  I submitted the first bid on behalf of SRM for a new snow blower.  Since SRM had no used options at the time that met FAA Vancouver's specific requirements, I submitted the second bid on behalf of IML for a used snow blower I owned personally.  I soon realized that IML was not registered on SAM.gov, but Sawtooth was, so I submitted the third bid on behalf of Sawtooth for the same used snow blower I owned personally.  I submitted multiple bids because FAA Vancouver had requested multiple options and SRM had no used equipment that met FAA Vancouver's specific requirements at that time.

21)     In or about April 2023, I submitted a bid to a potential customer, Wolf Creek Ski Area, on behalf of IML for a used snow blower I was in the process of acquiring personally from a third party.  I had submitted a separate bid to Wolf Creek Ski Area on behalf of SRM for a new snow blower a few weeks before, but Wolf Creek Ski Area had indicated it could not justify the

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 6**

cost and was looking for used options. This is what prompted me to reach out to the third party to inquire about the used snow blower in the first place. IML's bid was for an entirely different, used snow blower SRM had no interest in. Again, I submitted multiple bids because Wolf Creek Ski Area had requested multiple options and SRM had no used equipment that met Wolf Creek Ski Area's specific requirements at that time.

22)    I emailed my resignation letter to SRM on June 29, 2023.

23)    SRM's suggestion that I somehow reinstalled the operating system on my SRM-issued laptop on June 28, 2023 is incorrect. I was in Montana that entire day and my laptop was located at an SRM facility in Burley. Attached hereto as **Exhibit 3** is a true and correct copy of a photograph of me in Montana on June 28, 2023. The last day I worked before leaving for Montana was Thursday, June 22. Upon finishing work on June 22, I left my SRM-issued laptop inside a bag in the backseat of an SRM service truck parked at SRM's facility located at 1350 Pomerelle Ave in Burley. I left for Montana on Sunday, June 25 and returned on Saturday, July 1. On Monday, July 3, I texted Trevor Rice to coordinate the return of my laptop. Due to the July 4 holiday the next day, I was unable to retrieve the laptop and bag until July 5. I returned the laptop to SRM on July 6. True and correct copies of text messages I exchanged with Trevor Rice are attached hereto as **Exhibit 1**.

24)    Ultimately, IIVOIII became a manufacturer of custom snow removal equipment and Sawtooth became its distributor.

25)    As the President of IIOVIII and Sawtooth, I am very familiar with the proprietary information and data used to develop and design products manufactured by IIOVIII and distributed by Sawtooth. Such information and data have been developed independently using

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 7**

primal knowledge and, in some instances, reverse engineering without referencing, using, or relying on any proprietary information or data of SRM.

26)      In approximately late August 2023, I began exchanging email correspondence with Christensen Machine Inc. ("CMI") for the purpose of ordering parts IIOVIII needed to manufacture equipment. Because IIOVIII's engineering department was just getting off the ground at the time, I sent CMI redacted copies of a few Kodiak Northwest, LLC ("Kodiak NW") drawings we found in the shop at the Paul Facility. It was my understanding that the drawings had been abandoned at the Paul Facility. I removed Kodiak NW's name from the drawings upon CMI's request because CMI already had in its possession numerous drawings and prints bearing the "Kodiak" name in its shop from previous work CMI had performed and desired to keep everything separate on their end.

27)      Specifically, on or about August 22, 2023, I sent CMI a redacted copy of a Kodiak NW drawing for part number P4-A98-1 dated 09/02/98, which was found on a shelf in the southwest corner of the parts room directly below a partially machined shaft. A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 4**.[1]

28)      On or about September 14, 2023, I sent CMI reacted copies of the following Kodiak NW drawings:

> a)      Drawing for part number P4-D66-6 dated 06/07/00, which was found on a shelf near the old machine shop door in the northwest corner of the parts room. A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 5**.

---

[1] Given SRM's allegations relating to the drawings I sent to CMI, the drawings are being filed under seal out of an abundance of caution.

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 8**

.

    b)      Drawing for part number P4-D66-5 dated 12/13/04, which was found on a shelf in the southwest corner of the parts room.  A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 6**.

    c)      Drawing for part number P2A434-1 dated 05/30/00, which was found on a shelf on the east end of the shop near several old sherbolt bins.  A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 7**.

29)    On or about September 11, 2023, I sent CMI reacted copies of the following Kodiak NW drawings:

    a)      Drawing for part number P2A243-1 dated 03/21/96, which was found on a shelf in the southwest corner of the parts room.  A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 8**.

    b)      Drawing for part number P6-C45-1 dated 07/15/98, which was found on a shelf in the northwest corner of the parts room.  A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 9**.

    c)      Drawing for part number P6-D65-3B dated 12/23/98, which was found on a shelf in the northwest corner of the parts room.  A true and correct copy of the original drawing is attached hereto as sealed **Exhibit 10**.

30)    To the best of my knowledge and belief, neither IIOVIII nor Sawtooth is currently referencing, using, or relying on any proprietary information or data of SRM in the development or design of products manufactured by IIOVIII and distributed by Sawtooth.

31)    I disagree with SRM's allegation that I improperly diverted SRM's Lassen Volcanic National Park purchase order to Sawtooth.  I stand behind my representation to NPS

that SRM was unable and unwilling to provide the service work at issue, which was a true statement at the time.

32)    I also disagree with SRM's allegations that I persuaded Honnen Equipment Co. that Sawtooth was affiliated with SRM or used any proprietary information of SRM to submit a bid on behalf of Sawtooth, which are incorrect.

33)    Finally, I disagree with SRM's allegations that I used any trade secrets of SRM to win a bid on behalf of Sawtooth for a new snowblower at Yosemite National Park, which is incorrect. The snow blower portion of Sawtooth's accepted bid was actually higher than the snow blower portion of SRM's bid. Sawtooth neither used an out-of-state loader dealer nor used SRM's pricing scheme.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 4th day of November, 2024.

DocuSigned by:

*Scott Pilling*

889C9EC053E64C5...

Scott Pilling

**DECLARATION OF SCOTT PILLING IN SUPPORT OF RESPONSE TO SRM-KODIAK AMERICA'S MOTION FOR PRELIMINARY INJUNCTION – 10**