Lee Radford, ISB #5719
John E. Cutler, ISB #9907
Daniel Biddulph, ISB #11561
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, Idaho 83402
Telephone:  208.522.6700
Facsimile:  208.522.5111
LRadford@parsonsbehle.com
JCutler@parsonsbehle.com
DBiddulph@parsonsbehle.com

*Attorneys for SRM-Kodiak America, LLC;*
*Lawrence Wayne Powell, Jr.; Kurt Harman;*
*Jonathan Price; and Kodiak America, LLC (Texas)*


## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT COURT OF IDAHO

| | |
|---|---|
| SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BREK PILLING, an individual; SCOTT PILLING, an individual; KODIAK AMERICA, LLC, a Delaware limited liability company; KODIAK NORTHWEST, INC., an Idaho Corporation; BAUB LLC, an Idaho limited liability company; PFT ENVIRO INVESTMENTS, LLC, an Idaho limited liability company; BUDGET TRUCK CENTER, LLC, an Idaho limited liability company; SAWTOOTH INDUSTRIAL, LLC, an Idaho limited liability company; IIOVIII PRECISION, LLC, an Idaho limited liability company; INTERMOUNTAIN LIVING, LLC, an Idaho limited liability company; BREK PILLING AS TRUSTEE OF THE PILLING FAMILY TRUST, an Idaho Trust; ARTHUR SADAMPI YAMADA, an individual; GARY | Case No. 4:24-cv-00112-DCN<br><br>**SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS** |

34546.001\4906-4483-1411

WICKERSHAM, an individual; CAROLYN SHOEMAKER, an individual; LURENE DILLE, an individual; DOE DEFENDANTS I-XX; and ROE ENTITY DEFENDANTS I-XX,

Defendants.

KODIAK AMERICA, LLC, a Delaware limited liability company; KODIAK NORTHWEST, INC.; BAUB, LLC; BREK PILLING; and PFT ENVIRO INVESTMENTS, LLC;

Counterclaimants,

vs.

SRM-KODIAK, AMERICA, LLC, an Idaho limited liability company, LAWRENCE WAYNE POWELL, JR., an individual aka Lawrence W. Powell; KURT HARMAN, an individual; JONATHAN PRICE, an individual; KODIAK AMERICA, LLC, a Texas limited liability company; and BRIAN L. TIBBETTS, an individual,

Counterdefendants.

SCOTT PILLING; SAWTOOTH INDUSTRIAL, LLC; IIOVIII PRECISION, LLC; and INTERMOUNTAIN LIVING, LLC,

Counterclaimants,

vs.

SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,

Counterdefendant.

Plaintiff and Counterclaim Defendant SRM-Kodiak America, LLC ("SRM"), and

Counterclaim Defendants Larence Wayne Powell, Jr. ("Powell"), Kurt Harman ("Harman"),

SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS - 2
34546.001\4906-4483-1411

Jonathan Price ("Price"), and Kodiak America, LLC ("Kodiak Texas"), by and through their undersigned counsel of record, hereby submit this *Memorandum in Support of Motion to Dismiss Counterclaims* (Dkt. 133).

In Count I, Brek Pilling ("Brek") alleges SRM breached a contract between Brek and SRM by "disparaging him." However, Brek fails to plead a single instance in which SRM "disparaged him," instead raising only threadbare assertions that someone associated with SRM may have done so. Further, Brek makes no factual allegations relating to damages. These conclusory allegations do not make out a plausible claim of breach of contract against SRM.

In Count II, Counterclaimant Kodiak America, LLC ("Sold Kodiak")[1] alleges SRM, Powell, Kodiak Texas, and Brian Tibbets ("Tibbets") engaged in a violation of the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. 1864(c) ("RICO" or "civil RICO"). However, Sold Kodiak's allegations fall far short of the requisite standards of Federal Rule of Civil Procedure 9(b) as required to survive a motion to dismiss. Sold Kodiak's allegations in essence recite certain elements of a RICO claim, without explaining who engaged in the allegedly fraudulent communications, when they occurred, or even what was said. Moreover, even giving the allegations the most generous read possible, Sold Kodiak allegations relate to only a single incident, not the "pattern" of activity required to establish a RICO claim.

In Counts III and IV, Sold Kodiak alleges SRM breached its contract with Sold Kodiak, or, alternatively, that SRM was unjustly enriched when it failed to make certain payments to Sold Kodiak for SRM's liabilities. In Counts V and VI, PFT Enviro Investments LLC ("PFT") alleges

---

[1] Counterclaimants assert that Kodiak America, LLC is the former name of KAM MFG LLC and refer to "Sold Kodiak" as "KAM" in their counterclaims, rather than "Sold Kodiak." *See* Dkt. 133 at 19, ¶ 2. For the purposes of evaluating this motion to dismiss, "KAM" and "Sold Kodiak" should be treated as the same entity.

SRM breached a promissory note when it failed to make payments and that Powell, Harman, and Price were correspondingly liable under a personal guaranty. With respect to all of these claims, SRM was given an expansive right of setoff under the Asset Purchase Agreement which allows SRM to withhold money owed to Counterclaimants and, when exercised, this failure to pay is not a breach of any agreement between or related to the parties. Because breach is an essential element of any breach of contract claim, and no breach has yet occurred under any relevant contract, Sold Kodiak's and PFT's claims against SRM fail. Likewise, because the personal guarantors are liable only in the event of SRM's breach, those claims fail as well.

### BACKGROUND

#### A.      The Asset Purchase Agreement and Associated Documents.

On September 29, 2021, SRM, Brek, Sold Kodiak, and Baub LLC, entered into an Asset Purchase Agreement (the "APA") for SRM to purchase certain Sold Kodiak assets. Dkt. 133 at 20, ¶ 13. The APA defined Sold Kodiak as the "Seller," Brek as an "Owner," and SRM as the "Purchaser." *Declaration of Counsel* (Dkt. 144) ("Counsel Decl.") at Ex. 1,[2] at 1 (Dkt. 146 (sealed exhibits)).

The APA also provided that, as part of the agreement, the parties to the APA would also enter into a subscription agreement with a "New Company," PFT, through which SRM would purchase twelve million dollars in equity in PFT. Ex. 1, § 8.2. Brek was the original owner of PFT.

As contemplated by the APA, other agreements and instruments were entered into between or with respect to the parties, including a "Modification Agreement" entered into on April 1, 2022 between SRM, Powell, Harman, Price, Brek, PFT, and Baub, which provided for certain

---

[2] Counterclaimants incorporated the terms of the Asset Purchase Agreement by reference into their counterclaims. Dkt. 133 at 20, ¶ 14. Thus, the APA can be considered in deciding this motion. *Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020).

modifications of the promissory note related to the purchase of PFT's equity (the "PFT Note") and the personal guaranty related to this Note (the "Personal Guaranty"). *See* Counsel Decl. at Ex. 2[3] (Dkt. 146 (sealed exhibits)).

Prior to this lawsuit, SRM had contributed $4,000,000.00 to the equity purchase of PFT. *Compare* Ex. 1, § 8.2 (agreeing to $12,000,000.00 contribution) *with* Dkt. 133 at 26, ¶ 58 (PFT alleging a note with a principal amount of $8,000,000.00). However, SRM asserts that Brek was using this funding (and PFT generally) for self-dealing rather than as a legitimate business and was acting oppressively towards SRM. Dkt. 1, ¶¶ 40-46. Accordingly, SRM asserted that its exercise of the right of setoff precluded any default and legally justified its decision to stop making payments under the APA and related agreements (such as the PFT Note). *See* Dkt. 1, ¶¶ 275-277 (requesting Court determine whether SRM was required to continue paying on PFT Note).

This exercise was consistent with the APA, which provided an expansive right of setoff to SRM, which SRM was entitled to exercise in its sole discretion. This provision stated:

> Right of Setoff. Upon notice to Seller specifying in reasonable detail the basis for such setoff, Purchaser has the option, in its sole discretion, to set off any amount to which it may be entitled, under this Article 9 or otherwise, against any amounts owed to Seller or any Owner, whether under this Agreement or otherwise. **The exercise of such setoff right by Purchaser in good faith, whether or not ultimately determined to be justified, will not constitute a breach, default, or event of default under this Agreement or any other agreement between or instrument with respect to the Parties**. Neither the exercise of nor the failure to exercise such right of setoff will constitute an election of remedies or limit Purchaser in

---

[3] Counterclaimants purport to attach a copy of the Promissory Note and Personal Guaranty to their Counterclaims. *See* Dkt. 133 at 26, ¶ 68 and at 27, ¶ 67. However, the documents are not attached. Counterclaim Defendants have thus attached the relevant agreement here, which is titled "Modification Agreement" with attachments that include the Promissory Note and Personal Guaranty. Ex. 2. The Court may consider this document because it is incorporated into the Counterclaims by reference and because it forms the basis of the Counterclaims at issue. *See Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020).

SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS - 5
34546.001\4906-4483-1411

any manner in the enforcement of any other remedies that may be available to it.

Ex. 1, § 9.8 (emphasis added).

SRM did exercise its right of setoff and requested the Court determine whether the right of setoff was appropriate. *See* Dkt. 1, ¶¶ 275-277.

### B.    SRM's Allegations of Breach of Contract.

On February 26, 2024, SRM filed a complaint against Brek and entities related to Brek, including, in relevant part, Sold Kodiak and PFT.[4] Dkt. 1. SRM's 318-paragraph complaint lays out in detail its allegations that, in relevant part, Brek and Sold Kodiak breached the APA. *See, e.g.,* Dkt. 1, ¶¶ 21-47, 263-273. This included allegations that Sold Kodiak and Brek caused millions in damages to SRM, including more than one million dollars of unlawfully retained money due to SRM under the terms of a contract with the Nevada Department of Transportation and another $500,000 from a contract colloquially known as the "City of Lubbock." Dkt. 1, ¶ 27(a)-(b). Losses also included roughly a million dollars in damages from misrepresentations in the records of Sold Kodiak with respect to a contract with the "City of Chicago," amongst other material misrepresentations which significantly harmed SRM. Dkt. 1, ¶ 27(c)-(d).

In response to SRM's complaint, Counterclaimants filed their Answer and Counterclaims. *See generally* Dkt. 133. Counterclaimants admit SRM possesses a right of setoff with respect to its obligations to PFT. Dkt. 133 at 5, ¶ 18.[5] Counterclaimants deny the breaches alleged by SRM, but do not allege that the exercise of the right of setoff was not in good faith. *Id*.

---

[4] SRM brought claims against several other related entities. *See generally* Dkt. 1. Additional entities also raised counterclaims against SRM and other Counterclaim Defendants. *See generally* Dkt. 133. However, this motion concerns only these specific Defendants and Counterclaimants.

[5] Counterclaimants' answer to this paragraph is insufficient. The allegation was that "Before it exercised its right of setoff, SRM had contributed millions of dollars to PFT under the subscription agreement." Dkt. 1, ¶ 38. Counterclaimants answered "the Pilling Defendants state that Plaintiff

SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS - 6
34546.001\4906-4483-1411

C.    **Counterclaimants' RICO Allegations.**

According to Counterclaimants, "Tibbets, Powell, Kodiak Texas, and SRM are each culpable persons within the meaning of the Civil RICO statute, and collectively the association of these individuals and entities forms a criminal enterprise, as illustrated hereinabove." Dkt. 133 at 23, ¶ 36.

In support of this allegation, Counterclaimants assert that Sold Kodiak expected to receive proceeds for a contract referred to as the "India Contract," which Sold Kodiak would transmit to SRM only after deducting costs Sold Kodiak allegedly paid on behalf of SRM. Dkt. 133 at 21-22, ¶¶ 18-23. Counterclaimants assert that, in approximately March 2023, Powell and/or Tibbets formed Kodiak Texas and opened a Wells Fargo Bank account under the name "Kodiak America LLC" using Kodiak Texas's EIN. Dkt. 133 at 22, ¶¶ 25, 27.

Counterclaimants allege, on information and belief, that Counterclaim Defendants formed Kodiak Texas "for the purpose of confusing and deceiving Wells Fargo and the buyer under the India Contract," and thereafter "falsely and fraudulently represented to Wells Fargo the funds owed by the Buyer under the India Contract should be deposited in the 'Kodiak America, LLC' bank account associated with Kodiak Texas" Dkt. 133, ¶ 30-31. Counterclaimants "transmitted or caused to be transmitted wire communications, writings, and other communications in interstate and foreign commerce for the purpose of obtaining funds owed by the Buyer under the India Contract by false and fraudulent pretenses," although no specific communications or writings are identified. Dkt. 133 at 23, ¶ 32.

---

possesses a right of setoff with respect to its obligations to PFT." Dkt. 133 at 5, ¶ 18. But even in its insufficiency, Defendants have not contested the existence of a contractual term affording Plaintiff "a right of set off with respect to its obligation to PFT." *Id.*

SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS - 7
34546.001\4906-4483-1411

The buyer under the India Contract then transmitted payment of more than $774,000 to Wells Fargo for "Kodiak America LLC," and Wells Fargo deposited the India Proceeds into Kodiak Texas's Wells Fargo bank account, rather than Sold Kodiak's bank account. Dkt. 133 at 23, ¶ 33-34.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard under Rule 12(c) for judgment on the pleadings is "functionally identical." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055, n. 4 (9th Cir. 2011) (quoting Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir.1989)).

On a motion to dismiss, the Court may consider "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)). In considering the complaint, "a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff." *Id.* (citing *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"When fraud is alleged, however, more is required." *Kline Enters. Inc. v. Swenson*, No. 1:11-CV-00535-BLW, 2012 WL 2060731, at *8 (D. Idaho June 6, 2012) (citing Fed. R. C. P. 9(b)) (unpublished); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (stating

that Rule 9(b)'s heightened pleading standard "applies to civil RICO fraud claims.") (citation omitted). When evaluating a pleading alleging fraud, the Court must consider whether the party "state[d] with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "To avoid dismissal for inadequacy under Rule 9(b), the complaint [] need[s] to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004)); *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (applying this standard to a civil RICO fraud claim). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Sanford v. Memberworks, Inc.*, 625 F.3d at 558.

## ARGUMENT

The Counterclaims against SRM, Powell, Harman, Price, and Kodiak Texas should be dismissed. Sold Kodiak's RICO claim (Count II) is essentially a bare recitation of certain elements of a RICO claim without providing the factual background in support. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991) (citing Fed. R. Civ. P. 9(b)). And, even reading between the lines, Sold Kodiak, at best, pleads a single episode of alleged fraud, which fails to establish the "pattern" required to make out a claim under RICO. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989)).

Brek's claim for breach of contract for alleged disparagement (Count I) contains nothing but conclusory statements that SRM supposedly breached the contract. But conclusory statements without sufficient factual support do not make out a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

PFT's claims for breach of contract (related to the PFT Note) and breach of the Personal Guaranty also fail (Counts V and VI). SRM was entitled to exercise (and did exercise) a broad right of setoff. An exercise of the right of setoff is not a breach of the promissory note. Without the element of breach, PFT's claim for breach of contract against SRM (and in turn, the personal guarantors) fails. *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2018 WL 2077725, at *3 (D. Idaho Feb. 27, 2018) (quoting *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (2013)) (cleaned up).

For the same reasons, Sold Kodiak's claims against SRM for breach of contract and unjust enrichment (Counts III and IV) fail. SRM's exercise of its right of setoff is not a breach (thus no breach of contract theory has been alleged), and there can be no recovery for unjust enrichment when the parties' relationship was governed by contract. *See Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011). The Counterclaims should be dismissed.

## I.  SOLD KODIAK'S ATTEMPT TO MANUFACTURE A CIVIL RICO CLAIM FROM GENERIC "FRAUD" ALLEGATIONS REQUIRES DISMISSAL.

Sold Kodiak falls far short of plausibly pleading a claim under RICO. To recover under civil RICO, a plaintiff must sufficiently plead: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), and (5) those acts have caused injury to the plaintiff's "business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).[6] A complaint which "simply echoes the language of the RICO statute" and "provides few details as to specific times, places, or roles played by individual defendants in the alleged scheme,"

---

[6] Count II cites "18 U.S.C. § 1946(c)," but since this statute does not exist, SRM presumes Sold Kodiak was intending to reference 18 U.S.C. § 1964(c).

is insufficient to meet this burden. *Timberline Nw., Inc. v. Hill*, 141 F.3d 1179 (9th Cir. 1998) (unpublished).

Sold Kodiak has done nothing more than repeat RICO buzzwords without plausibly alleging facts which would constitute a civil RICO violation. Sold Kodiak has not even sufficiently plead a single predicate act. What is more – RICO requires a pattern of racketeering activities. Yet Sold Kodiak asserts only one apparent instance of alleged "fraud" and simply asserts (without any supporting facts) that several of the Counterclaim Defendants engaged in it. This is plainly insufficient under even Rule 8 – much less the heightened pleading standard required of such claims under Rule 9. Sold Kodiak's civil RICO claim should be dismissed.

A. **Sold Kodiak fails to sufficiently plead a single predicate act, which dooms its civil RICO claim.**

Racketeering activity must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961, which include mail fraud and wire fraud. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985); *Zazzali v. Eide Bailly LLP*, No. 1:12-CV-349-S-MJP, 2013 WL 6045978, at \*26 (D. Idaho Nov. 14, 2013) (*citing Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir.2004)). The elements of wire or mail fraud are: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.* at \*26.

When a civil RICO claimant grounds his or her claim in a predicate act of mail or wire fraud, "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp.,* 940 F.2d at 405 (citing Fed. R. Civ. P. 9(b)). Thus, a complaint should be dismissed when a claimant fails to allege with specificity who took the actions, when they took the actions, and the role of the activity in the fraudulent scheme. *See Atl. Richfield Co. v. Ramirez,*

176 F.3d 481 (9th Cir. 1999) (claims did not comply with Rule 9(b) when "counterclaims failed to specify the time and place of the fraudulent statements, identify the specific persons who made the statements, and explain why the statements were false"); *Moore v. Kayport Package Exp.*, Inc., 885 F.2d 531, 541 (9th Cir. 1989) (upholding dismissal and denial of leave to amend when plaintiffs "fail[ed] to specify the time, place, and content of the alleged mail and securities fraud"); *cf. Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987) (fraud adequately alleged when "complaint describes the dates on which the letters were written, by whom and to whom the letters were sent, the letters' content, and the letters' role in the fraudulent scheme").

Further, lumping a group of Counterclaim Defendants together and simply alleging that they all engaged in a course of action does not meet the heightened pleading standard. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir.2007)). A counterclaimant "must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *Id.* This is particularly important in this context since, "mere participation is an insufficient predicate; rather, some degree of actual direction is also needed to support a RICO claim." *Zazzali*, 2013 WL 6045978, at *23 (citing *Reves v. Ernst & Young,* 507 U.S. 170 (2003)). In the civil RICO context, dismissal is appropriate when the complaint "fails to illuminate the role each defendant played in the suspect transaction[.]" *Kline Enters. Inc. v. Swenson*, No. 1:11-CV-00535-BLW, 2012 WL 2060731, at *9 (D. Idaho June 6, 2012) (unpublished).

Sold Kodiak has simply not sufficiently plead the who, what, and when necessary under the heightened pleading standard to establish a single, predicate act. Instead, Sold Kodiak simply makes conclusory allegations (essentially restating the elements of the claim), which lump all the Counterclaim Defendants together and fail to explain who did what or when. For example, Counterclaimants allege "Tibbets, Powell, Kodiak Texas, and SRM transmitted or caused to be transmitted wire communications, writings, and other communications in interstate and foreign commerce for the purpose of obtaining funds owed by the Buyer under the India Contract by false and fraudulent pretenses." Dkt. 133 at 23, ¶ 32. But these types of allegations are plainly insufficient as they fail to explain what specific "communications" occurred or even who made the communications and to whom they were specifically made. *See Lancaster*, 940 F.2d at 405 (insufficient when "no specific mailings mentioned" and applicable time period is a range). This is plainly insufficient and the civil RICO claim must be dismissed on this basis alone.

B.  **Allegations that Counterclaim Defendants had a singular purpose (to reroute the proceeds of a single sale) do not establish a "pattern of racketeering activity."**

Even if Sold Kodiak had plausibly alleged a single predicate act (and it has not), Sold Kodiak still fails to establish the pattern of actions required to survive a motion to dismiss on a RICO claim. "[P]roper emphasis must be placed on 'pattern' as an independent component of a RICO claim." *Jarvis v. Regan*, 833 F.2d 149, 152 (9th Cir. 1987) (citing *Sedima*, 105 S.Ct. at 3285 n. 14). "One act does not a pattern make." *Bennett v. Centerpoint Bank*, 761 F. Supp. 908, 917 (D.N.H.), *aff'd,* 953 F.2d 634 (1st Cir. 1991). A pattern is "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5).

While two acts of racketeering activity are required, simply pleading multiple acts is not itself sufficient to establish a "pattern." Instead, a "plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."

*Driggers v. Beck*, No. 1:10-CV-00182-EJL, 2012 WL 3731783, at \*9 (D. Idaho Aug. 28, 2012) (internal quotation marks omitted). This "continuity" requirement is met by pleading either open-ended continuity, in which the pattern of racketeering activity "projects into the future with a threat of repetition," or closed-ended continuity, in which the predicate acts extend over a "substantial period of time.'" *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989)). "Predicate acts extending over a few weeks or months" without more "do not satisfy [the closed-ended continuity] requirement." *Id.* at 242.

Further, when the "acts" alleged are "collective conduct [that] is in a sense a single episode having the singular purpose of impoverishing" a single victim, the Ninth Circuit consistently confirms these acts do not amount to a pattern under RICO. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992).[7] For example, in *Medallion Television Enterprises*, the plaintiffs alleged multiple predicate acts of wire fraud, mail fraud, and interstate transportation of stolen property, in connection with an alleged fraudulent scheme to acquire broadcast rights to a boxing match. *See Medallion Television Enters., Inc.*, 833 F.2d at 1361-62. Although multiple predicate acts made up the alleged scheme, the Ninth Circuit found that no pattern could be established. *Id.* There was no risk of recurrence because "[o]nce the joint venture had acquired the broadcast rights, the fraud, if indeed it was a fraud, was complete." *Id.* at 1364.

Here, the predicate acts alleged took place during a period of a single month (apparently February 2024) and thus do not stretch over a substantial period of time to establish closed-ended

---

[7] *See also Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1987) (threat of continued criminal activity absent when "case involved but a single alleged fraud with a single victim," even though several actions alleged); *Jarvis v. Regan*, 833 F.2d 149 (9th Cir. 1987) (several alleged predicate acts of mail and wire fraud were "isolated and presented no threat of recurring" because they all had a singular purpose); *Knipe v. Washington Square Cap.*, 116 F.3d 484 (9th Cir. 1997) (unpublished).

SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS - 14
34546.001\4906-4483-1411

continuity. *See* Dkt. 133 at 22, ¶ 29 (alleging the "scheme or artifice" involving wires occurred only in February 2024); *see H.J. Inc.*, 492 U.S. at 242. And nothing in Sold Kodiak's pleading plausibly alleges facts which would establish a risk of repeated activities which might establish open-ended continuity. In fact, Sold Kodiak alleges this supposed "scheme" was intent on obtaining one set of proceeds – the "India Proceeds." Sold Kodiak also alleges that Counterclaim Defendants formed Kodiak Texas with a singular purpose: "confusing and deceiving Wells Fargo and the buyer under the India Contract." Dkt. 133 at 22, ¶ 30. Thus, "[o]nce the [Counterclaim Defendants] had acquired the [India Proceeds], the fraud, if indeed it was a fraud, was complete." *Id.* at 1364. This indicates an absence of threat of repetition. Because "proper emphasis must be placed on 'pattern' as an independent component of a RICO claim," and Sold Kodiak has not established the pattern component in its Counterclaim, Sold Kodiak's claim must be dismissed. *See Jarvis*, 833 F.2d at 152.

## II.    BREK'S COUNTERCLAIM FOR BREACH OF CONTRACT AGAINST SRM FAILS TO STATE A PLAUSIBLE CLAIM.

Although a Court must take all well-plead allegations as true, this rule is "inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "formulaic recitation of the elements" or a "bare legal conclusion" is conclusory and "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Instead, to survive a motion to dismiss, a complaint must allege "factual allegations" that rise above the speculative level, rather than mere "legal conclusion[s] couched as factual allegation[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

Under Idaho law, to survive a motion to dismiss, a plaintiff must plead facts making it plausible that there is: "(a) the existence of [a valid, enforceable] contract, (b) the breach of the

SRM-KODIAK AMERICA, POWELL, HARMAN, PRICE, AND KODIAK TEXAS'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS - 15
34546.001\4906-4483-1411

contract, (c) the breach caused damages, and (d) the amount of those damages." *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2018 WL 2077725, at *3 (D. Idaho Feb. 27, 2018) (quoting *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (2013)) (cleaned up). In analyzing an alleged breach of a non-disparagement clause, trial courts routinely require more than a statement that the defendant "disparaged" someone in order to properly plead the element of breach. *See, e.g., SpotterRF LLC v. Knoch*, No. 3:24-CV-05994, 2025 WL 1530305, at *15 (W.D. Wash. May 29, 2025) (allegation that defendant breached the contract by "disparaging [plaintiff]" "fail to rise above the speculative level"); *Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d 667, 680 (D. Md. 2013) (claim dismissed when complaint "d[id] not allege the particular nature of the remarks or to whom or when such remarks were made").

Here, Brek does not plausibly allege either breach or damages – both essential elements of a contract claim under Idaho law. As to alleged breach, Brek simply states a breach occurred without providing any facts which would rise the claim to the level of plausible. *See* Dkt. 133 at 20, ¶ 15 (stating SRM apparently breached the non-disparagement clause by "disparaging" him). Brek does not even say what was said that might be "disparaging," or who said it. *Id.* Nor does Brek provide factual allegations as to his damages – instead simply stating "[a]s a result of SRM's breach . . . Brek has sustained damages." Dkt. 133 at 21, ¶ 16. This is simply a legal conclusion couched as a factual allegation, which is not sufficient to survive a motion to dismiss. This threadbare recital of an element of the breach of contract claim (damages) is not entitled to the presumption of truth. Because there are no true factual allegations (not conclusory statements or legal conclusions) which would allow the Court to conclude that Brek has a plausible claim to relief, Count I must be dismissed.

III.    **PFT FAILS TO ESTABLISH A BREACH OF THE PROMISSORY NOTE AND THUS COUNTS V AND VI MUST BE DISMISSED.**

Any breach of contract claim regarding the PFT Note and corresponding personal guaranty fail as a matter of law because the contract defines SRM's withholding of further payment to PFT as an act expressly authorized by the broad setoff provision of the contract. An essential element of a claim for breach of contract under Idaho law is that the contract was breached. *Yellowstone Poky, LLC,* 2018 WL 2077725, at *3. A breach "is a failure, without legal excuse, to perform any promise, which forms the whole or part of a contract." *Idaho Power Co. v. Cogeneration, Inc.*, 9 P.3d 1204, 1212–13 (Idaho 2000) (citing *Hughes v. Idaho State University*, 835 P.2d 670, 672 (Idaho Ct.App.1992)) (emphasis added).

When a party has a right to take certain actions (such as SRM's right to setoff) and exercises that right, a plaintiff must explain how that conduct is a breach in order to survive a motion to dismiss. *See Williams v. USAA Life Ins. Co.*, No. 1:24-CV-00301-BLW, 2024 WL 4417511, at *3 (D. Idaho Oct. 4, 2024) (complaint fails to state a claim for breach of contract when recission permissible and "complaint . . . contains no allegations that [defendant's] recission was improper"). Further, claims against guarantors necessarily fail when the claims for the underlying breach are not established. *See N. Haven Bus. Park, Inc. v. Balance Regenerative Med., PLLC*, 573 P.3d 191, 205 (Idaho Ct. App. 2025) (claims against guarantors "necessarily fails" when claim against contracting party fails).

Here, Counterclaimants cannot establish a breach of the PFT Note. Counterclaimants admit that SRM has a right of setoff of the note. Dkt. 133 at 5, ¶ 18. Counterclaimants do not allege SRM acted in bad faith in exercising this right. And this right of setoff explicitly defines SRM's actions as *not* constituting a breach. The APA explicitly states that "[t]he exercise of such setoff right by Purchaser in good faith, <u>whether or not ultimately determined to be justified, will not constitute a</u>

breach, default, or event of default under this Agreement or any other agreement between or instrument with respect to the Parties." APA, § 9.8 (emphasis added). This vitiates any claim for breach of contract PFT may have against SRM at this stage. And, because the right to pursue a breach against the guarantors for a breach of the PFT Note necessarily requires that a breach of the PFT note has occurred, PFT cannot make out any claim against the guarantors. Critically, here, allowing Defendants to pursue their claims past this motion to dismiss phase denies the Counterclaim Defendants a material benefit under the contract set forth in the setoff provision. The language precluding a breach or default even for an *unjustified* assertion of the setoff right is clear and should be vindicated at this motion to dismiss phase. Counterclaim Defendants should not be required to respond to discovery or otherwise be subject to the burdens of litigation until there is an adjudication on the asserted claim for setoff. As long as the setoff claim remains unadjudicated, any claim for breach against the Counterclaim Defendants is not ripe. Accordingly, these claims must be dismissed.

## IV.   FOR THE SAME REASONS, SOLD KODIAK'S CLAIMS RELATED TO SRM'S ALLEGED BREACH OF CONTRACT MUST BE DISMISSED.

Counts III and IV (Sold Kodiak's claims for breach of contract and unjust enrichment against SRM) must be dismissed for the same reasons as Counts V and VI. The right of setoff explicitly covers the APA and "any other agreement between . . . the Parties." Ex. 1, § 9.8. Assuming an agreement "subsequent to the execution of the [APA]" existed between SRM and Sold Kodiak (both Parties to the APA), this agreement would be subject to the right of setoff. Ex. 1, § 9.8. But, as explained above, SRM exercised its right of setoff, thus there is no breach of any "subsequent agreement" between SRM and Sold Kodiak due to any alleged nonpayment by SRM to Sold Kodiak. Without a breach, there can be no breach of contract.

Finally, Sold Kodiak cannot circumvent the setoff right by styling its claims as "unjust enrichment" (rather than breach of an agreement) against SRM. A party cannot claim unjust enrichment when there is a contract between the parties covering the same subject matter. *See Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011). Here, Sold Kodiak attempts to claim "unjust enrichment" because it allegedly made certain payments to third parties on SRM's behalf to avoid being sued by those third parties (i.e. it claims it assumed SRM's liability and would like to be reimbursed). Dkt. 133 at 25, ¶¶ 50-56 (unjust enrichment claim). But the APA in this matter spelled out expressly the assumption of liabilities undertaken by SRM and the liabilities retained by Sold Kodiak. *See* Ex. 1, §§ 2.2 and 2.3. The APA also covers in detail how the parties might indemnify one another and how they should properly deal with third-party claims or potential third-party claims. *See generally* Ex. 1, Article 9. Because the subject matter is governed by the parties' contract, the unjust enrichment claim must also be dismissed.

## CONCLUSION

For the reasons identified above, the Counterclaims against SRM, Powell, Harman, Price, and Kodiak Texas should be dismissed.

DATED June 18, 2026.

PARSONS BEHLE & LATIMER

*/s/ John E. Cutler*

Lee Radford
John E. Cutler
Daniel Biddulph

*Attorneys for SRM-Kodiak America, LLC; Lawrence Wayne Powell, Jr.; Kurt Harman; Jonathan Price; and Kodiak America, LLC (Texas)*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on the date given below, s/he caused to be served a copy of the foregoing *SRM-Kodiak America, Powell, Harman, Price, And Kodiak Texas's Memorandum in Support of Motion to Dismiss Amended Counterclaims* upon the following persons by the method of service indicated below:

| | |
|---|---|
| Bren Mollerup<br>BENOIT, ALEXANDER, MOLLERUP &<br>DANIELSON, PLLC<br>P.O. Box 366<br>Twin Falls, ID  83303<br>*Attorneys for Defendant Carolyn Shoemaker* | [x] CM/ECF<br>    *benoitlaw@benoitlaw.com*<br>    *messinger@benoitlaw.com*<br>    *mollerup@benoitlaw.com* |
| David W. Gadd<br>STOVER GADD & ASSOCIATES, PLLC<br>905 Shoshone St. N.<br>P.O. Box 1428<br>Twin Falls, ID  83303-1428<br>*Attorneys for Defendants Brek Pilling, Kodiak America, LLC, Baub, LLC, Kodiak Northwest, Inc., PFT Enviro Investments, LLC, and Brek Pilling as Trustee of the Pilling Family Trust* | [x] CM/ECF<br>    *dwg@magicvalleylaw.com* |
| Mark O. Morris<br>Tara Martens Miller<br>Benjamin J. Mills<br>SNELL & WILMER, LLP<br>Key Business Center<br>702 W. Idaho Street, Ste 1100<br>Boise, ID  83702<br>*Attorneys for Defendants Brek Pilling, Kodiak America, LLC, Baub, LLC, Kodiak Northwest, Inc., PFT Enviro Investments, LLC, and Brek Pilling as Trustee of the Pilling Family Trust* | [x] CM/ECF<br>    *mmorris@swlaw.com*<br>    *tmmiller@swlaw.com*<br>    *bemills@swlaw.com* |
| Peter M. Wells<br>MAY, RAMMELL & WELLS, CHARTERED<br>216 W. Whitman<br>PO Box 370<br>Pocatello, ID  83204-0370<br>*Attorneys for Defendant Gary Wickersham* | [x] CM/ECF<br>    *pete@mrwlaw.net* |

Kyle Eric Bastian
WRIGHT BROTHERS LAW OFFICE, PLLC
P.O. Box 5678
Twin Falls, ID  83303
*Attorneys for Defendants Scott Pilling, IIOVIII Precision, LLC, Sawtooth Industrial, LLC, and Intermountain Living, LLC*

[x] CM/ECF
    *kbastian@wrightbrotherslaw.com*

DATED June 18, 2026.

/s/ *John E. Cutler*
Lee Radford
John E. Cutler
Daniel Biddulph