David W. Gadd (ISB# 7605)
**STOVER, GADD & ASSOCIATES, PLLC**
905 Shoshone St. N.
P.O. Box 1428
Twin Falls, Idaho 83303-1428
Telephone:  (208) 736-9900
Facsimile:  (208) 736-9929
Email: dwg@magicvalleylaw.com

Mark O. Morris (ISB# 10850)
Tara Martens Miller (ISB# 5773)
Benjamin J. Mills (ISB # 11748)
**SNELL & WILMER L.L.P.**
Key Business Center
702 W. Idaho Street, suite 1100
Boise, ID 83702
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800
Email:  mmorris@swlaw.com
        tmmiller@swlaw.com
        bemills@swlaw.com

*Attorneys for Kodiak America, LLC; Kodiak Northwest, Inc.,*
*BAUB LLC; Brek Pilling; and PFT Enviro Investments, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BREK PILLING, an individual; SCOTT PILLING, an individual; KODIAK AMERICA, LLC, a Delaware limited liability company; KODIAK NORTHWEST, INC., an Idaho corporation; BAUB LLC, an Idaho limited liability company; PFT ENVIRO INVESTMENTS, LLC, an Idaho limited liability company; ~~BUDGET TRUCK CENTER, LLC, an Idaho limited liability company~~; SAWTOOTH INDUSTRIAL, LLC, an Idaho limited liability company; IIOVIII | **ANSWER AND SECOND AMENDED COUNTERCLAIM**<br><br>Case No. 4:24-cv-00112-DCN<br><br>Judge David C. Nye |

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 1**
4938-3797-9067

PRECISION, LLC, an Idaho limited liability company, INTERMOUNTAIN LIVING, LLC, an Idaho limited liability company; BREK PILLING AS TRUSTEE OF THE PILLING FAMILY TRUST, an Idaho Trust; ~~ARTHUR SADAMPI YAMADA, an individual~~; GARY WICKERSHAM, an individual; CAROLYN SHOEMAKER, an individual; LURENE DILLE, an individual;  DOE DEFENDANTS I–XX; and ROE ENTITY DEFENDANTS I–XX,

Defendants.

KODIAK AMERICA, LLC; BREK PILLING; and PFT ENVIRO INVESTMENTS, LLC,

Counterclaim Plaintiffs,

v.

SRM-KODIAK AMERICA, LLC, an Idaho limited liability company; WAYNE POWELL; BRIAN TIBBETS; KURT HARMAN; JONATHAN PRICE; and KODIAK AMERICA, LLC, a Texas limited liability company,

Counterclaim Defendants.

SCOTT PILLING; SAWTOOTH INDUSTRIAL, LLC; IIOVIII PRECISION, LLC; and INTERMOUNTAIN LIVING, LLC,

Counterclaim Plaintiffs,

v.

SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,

Counterclaim Defendant.

COME NOW Defendants Kodiak America, LLC; Kodiak Northwest, Inc.; BAUB LLC;

Brek Pilling; and PFT Enviro Investments, LLC (collectively, the "Pilling Defendants"), by and

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 2**
4938-3797-9067

through their attorneys of record, STOVER, GADD & ASSOCIATES, PLLC and SNELL & WILMER L.L.P., and in answer to Plaintiff's *Verified Complaint and Demand for Jury Trial* ("Complaint") hereby admit, deny, and affirmatively allege as follows:

## ANSWER

The following defenses are not stated separately as to each claim for relief or allegation of Plaintiff. Nevertheless, the following defenses are applicable, where appropriate, to any and all of Plaintiff's claims for relief. The Pilling Defendants, in asserting the following defenses, do not admit that the burden of proving the allegations or denials contained in the defenses is upon them, but, to the contrary, assert that by reason of said denials, and by reason of relevant statutory and judicial authority, the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon Plaintiff. Moreover, the Pilling Defendants do not admit or assume, in asserting any defense, any responsibility or liability on their part but, to the contrary, specifically deny any and all allegations of responsibility and liability contained in the Complaint.

1.    The Complaint fails to state a cause of action against one or more of the Pilling Defendants upon which relief may be granted and, as such, should be dismissed pursuant to F.R.C.P. 12(b)(6).

2.    The Pilling Defendants deny all paragraphs and allegations in the Complaint not specifically admitted herein.

## PARTIES

3.    The Pilling Defendants admit paragraphs 1, 2, 3, 4, 5, 6, 7, and 8 of the Complaint.

4.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 9, 10, and 11 of the Complaint and therefore deny the

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 3**
4938-3797-9067

same.

5.      With reference to paragraph 12 of the Complaint, the Pilling Defendants admit only that Brek Pilling is the trustee of the Pilling Family Trust.

6.      The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 13 and 14 of the Complaint and therefore deny the same.

7.      The Pilling Defendants admit paragraph 15 of the Complaint.

8.      The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 16 and 17 of the Complaint and therefore deny the same.

## JURISDICTION AND VENUE

9.      In response to the allegations set forth in paragraphs 18, 19, and 20 of the Complaint, the Pilling Defendants acknowledge that this Court has jurisdiction over properly pled matters involving 18 U.S.C. § 1836(c), 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331; however, in making this acknowledgement, the Pilling Defendants neither admit that any such matters are actually properly pled in the Complaint nor that the factual allegations of the Complaint actually justify the exercise of such jurisdiction. To the extent this Court has jurisdiction over these matters, venue is proper in the District of Idaho.

## GENERAL ALLEGATIONS

10.     In response to paragraphs 21, 22, and 23 of the Complaint, the Pilling Defendants admit only that Defendants Kodiak America, LLC; BAUB, LLC; and Brek Pilling executed a certain Asset Purchase Agreement, to which Plaintiff is a party, on September 29, 2021.

11.     In response to paragraph 24 of the Complaint, the Pilling Defendants admit that the

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 4**
4938-3797-9067

terms of the Asset Purchase Agreement are confidential and state that the Asset Purchase Agreement speaks for itself. The Pilling Defendants deny any remaining allegations contained in paragraph 24 to the extent inconsistent with the terms of the Asset Purchase Agreement.

12. The Pilling Defendants deny the allegations set forth in paragraphs 25, 26, 27, 28, 29, and 30.

13. With respect to paragraph 31 of the Complaint, the Pilling Defendants are uncertain to which agreement Plaintiff refers when it makes allegations regarding "that agreement" and, therefore, deny the allegations set forth in paragraph 31. If Plaintiff refers to the Asset Purchase Agreement, the terms of said agreement speak for themselves.

14. The Pilling Defendants deny the allegations of paragraphs 32 and 33.

15. In response to paragraph 34 of the Complaint, the Pilling Defendants admit only that Plaintiff entered into that certain Subscription Agreement with Defendant PFT Enviro Investments LLC ("PFT").

16. The Pilling Defendants deny the allegations set forth in paragraph 35.

17. The Pilling Defendants deny the allegations set forth in Paragraph 36. Section 9.8 of the Asset Purchase Agreement provides a right of setoff only as to "amounts owed to Seller or any Owner, whether under this Agreement or otherwise." "Seller" and "Owner" are defined terms under the Asset Purchase Agreement. "Seller" refers to KAM, and "Owner" refers to BAUB, LLC and Brek Pilling. PFT is neither the Seller nor an Owner under the Asset Purchase Agreement. Accordingly, any right of setoff provided under § 9.8 of the Asset Purchase Agreement does not apply to amounts owed by Plaintiff to PFT.

18. The Pilling Defendants deny the allegations set forth in paragraphs 37 and 38. The Pilling Defendants further deny that Plaintiff validly exercised any right of setoff under the Asset

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 5**
4938-3797-9067

Purchase Agreement. To the extent Plaintiff attempted or claims to have exercised such a right, the Pilling Defendants deny that Plaintiff satisfied the contractual requirements for exercising the right, deny that any attempted setoff was made in good faith, and deny that § 9.8 of the Asset Purchase Agreement applies to amounts owed by Plaintiff to PFT.

19.    The Pilling Defendants admit the allegations set forth in paragraphs 39 and 40 of the Complaint.

20.    In response to paragraphs 41 and 42 of the Complaint, the Pilling Defendants admit that Brek Pilling was the original manager of PFT and is the current manager of PFT. The Pilling Defendants deny that the Pilling Family Trust is the manager of PFT and state that any Idaho Secretary of State record suggesting otherwise is inaccurate.

21.    In response to paragraph 43 of the Complaint, the Pilling Defendants state that the terms of PFT's operating agreement speak for themselves.

22.    The Pilling Defendants deny the allegations set forth in paragraphs 44, 45, 46, and 47 of the Complaint.

23.    In response to paragraph 48 of the Complaint, the Pilling Defendants state that the terms of the Asset Purchase Agreement speak for themselves.

24.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, and 75 of the Complaint and therefore deny the same.

25.    In response to paragraph 76 of the Complaint, the Pilling Defendants state Defendant Brek Pilling has not held an interest in Intermountain Living, LLC since approximately 2021.

26.    The Pilling Defendants are without sufficient information at this time to admit or

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 6**

deny the allegations contained in paragraphs 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, and 88 of the Complaint and therefore deny the same.

27.    In response to paragraph 89 of the Complaint, the Pilling Defendants deny that Kodiak Northwest, Inc. is the owner of the real property located at 50 E. Ellis St., Paul, Idaho.

28.    In response to paragraph 90 of the Complaint, the Pilling Defendants admit only that Brek Pilling has an ownership interest in Kodiak Northwest, Inc. The Pilling Defendants are without sufficient information at this time to admit or deny the remaining allegations contained in paragraph 90 and therefore deny the same.

29.    In response to paragraph 91 of the Complaint, the Pilling Defendants admit only that the real property located at 50 E. Ellis St., Paul, Idaho, is insured by BAUB, LLC.

30.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, and 169 of the Complaint and therefore deny the same.

31.    In response to paragraphs 170 and 171 of the Complaint, the Pilling Defendants deny that Brek Pilling conspired with Scott Pilling, Arthur Sadampi Yamada, or any other person to personally benefit from the alleged opportunity to the exclusion of Plaintiff. The Pilling Defendants are without sufficient information at this time to admit or deny the remaining allegations contained in paragraphs 170 and 171 and therefore deny the same.

32.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182,

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 7**
4938-3797-9067

and 183 of the Complaint and therefore deny the same.

33.     In response to paragraph 184 of the Complaint, the Pilling Defendants deny that Brek Pilling engaged in any fraudulent activities.

34.     The Pilling Defendants are without sufficient information at this time to admit or deny the allegations contained in paragraphs 185 and 186 of the Complaint and therefore deny the same.

35.     In response to paragraph 187 of the Complaint, the Pilling Defendants admit only that Plaintiff's counsel sent a letter to counsel for Defendants Kodiak America, LLC; BAUB, LLC; and Brek Pilling on July 17, 2023, which letter speaks for itself.

36.     In response to paragraphs 188, 189, and 190 of the Complaint, the Pilling Defendants admit only that counsel for Defendants Kodiak America, LLC; BAUB, LLC; and Brek Pilling sent a letter to Plaintiff's counsel on July 26, 2023, which letter speaks for itself. The Pilling Defendants are without sufficient information at this time to admit or deny the allegations concerning Scott Pilling in paragraph 190 of the Complaint and therefore deny the same.

37.     In response to paragraph 191 of the Complaint, the Pilling Defendants deny that the July 26, 2023 letter contained any knowingly false statements.

38.     The Pilling Defendants deny the allegations set forth in paragraph 192 that pertain to Brek Pilling and are without sufficient information at this time to admit or deny the allegations concerning Scott Pilling in paragraph 192 of the Complaint and therefore deny the same.

39.     The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraph 193 of the Complaint and therefore deny the same.

40.     In response to paragraph 194 of the Complaint, the Pilling Defendants admit only that Scott Pilling and Brek Pilling met with representatives of Elecon in approximately August

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 8**
4938-3797-9067

2023. The Pilling Defendants deny the remaining allegations of paragraph 194.

41.     The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraphs 195 and 196 of the Complaint and therefore deny the same.

42.     The Pilling Defendants deny the allegations set forth in paragraph 197 that pertain to Brek Pilling and are without sufficient information at this time to admit or deny the remaining allegations set forth in paragraph 197 of the Complaint and therefore deny the same.

43.     The Pilling Defendants deny the allegations set forth in paragraph 198 of the Complaint.

44.     The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraphs 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, and 212 of the Complaint and therefore deny the same.

45.     The Pilling Defendants deny the allegations set forth in paragraphs 213, 214, and 215 of the Complaint.

46.     The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraph 216 of the Complaint and therefore deny the same.

47.     The Pilling Defendants deny the allegations set forth in paragraph 217 that pertain to Brek Pilling and are without sufficient information at this time to admit or deny the remaining allegations set forth in paragraph 217 of the Complaint and therefore deny the same.

## FIRST CAUSE OF ACTION

48.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 218 of the Complaint.

49.     With respect to paragraphs 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, and

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 9**
4938-3797-9067

229 of the Complaint, the Pilling Defendants are uncertain to which alleged "trade secrets" Plaintiff refers and therefore are without sufficient information at this time to admit or deny the allegations set forth in those paragraphs. Accordingly, the Pilling Defendants deny the same. The Pilling Defendants further deny that any of the Pilling Defendants misappropriated or employed any improper or unlawful means to acquire any alleged trade secrets or other intellectual property of Plaintiff.

50.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraphs 230 and 231 of the Complaint and therefore deny the same.

51.    In response to the first sentence of paragraph 232 of the Complaint, the Pilling Defendants state that the terms of the Asset Purchase Agreement speak for themselves. The Pilling Defendants are without sufficient information at this time to admit or deny the remaining allegations set forth in paragraph 232 of the Complaint and therefore deny the same.

52.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraphs 233, 234, and 235 of the Complaint and therefore deny the same.

53.    The Pilling Defendants deny the allegations set forth in paragraph 236 that pertain to Brek Pilling and are without sufficient information at this time to admit or deny the remaining allegations set forth in paragraph 236 of the Complaint and therefore deny the same.

54.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in paragraph 237 of the Complaint and therefore deny the same.

55.    The Pilling Defendants deny the allegations set forth in paragraphs 238, 239, 240, 241, 242, and 243.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 10**
4938-3797-9067

## SECOND CAUSE OF ACTION

56.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 244 of the Complaint.

57.     The Pilling Defendants deny the allegations set forth in paragraphs 245, 246, 247, 248, 249, 250, 251, 252, and 253 of the Complaint.

## THIRD CAUSE OF ACTION

58.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 254 of the Complaint.

59.     The Pilling Defendants deny the allegations set forth in paragraphs 255, 256, 257, 258, 259, 260, 261, and 262 of the Complaint.

## FOURTH CAUSE OF ACTION

60.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 263 of the Complaint.

61.     In response to paragraphs 264 and 265 of the Complaint, the Pilling Defendants admit only that Defendants Kodiak America, LLC; BAUB, LLC; and Brek Pilling executed a certain Asset Purchase Agreement, to which Plaintiff is a party, on September 29, 2021, the terms of which speak for themselves.

62.     The Pilling Defendants deny the allegations set forth in paragraphs 266, 267, 268, 269, 270, 271, 272, and 273 of the Complaint.

## FIFTH CAUSE OF ACTION

63.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 274 of the Complaint.

64.     The Pilling Defendants deny the allegations set forth in Paragraphs 275, 276, and

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 11**
4938-3797-9067

277 of the Complaint and affirmatively allege that Plaintiff has not validly exercised any right of setoff under the Asset Purchase Agreement. To the extent Plaintiff attempted or claims to have exercised such a right, the Pilling Defendants allege that Plaintiff failed to satisfy the contractual requirements for exercising the right, did not act in good faith, and may not apply any setoff right under the Asset Purchase Agreement to amounts owed by Plaintiff to PFT.

## SIXTH CAUSE OF ACTION

65.    The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 278 of the Complaint.

66.    In response to paragraph 279 of the Complaint, the Pilling Defendants state that PFT is a legitimate company that has been and is conducting lawful business with the purpose and intent of returning a profit for its owners.

67.    The Pilling Defendants deny the allegations set forth in paragraphs 280, 281, 282, 283, 284, and 285 of the Complaint.

## SEVENTH CAUSE OF ACTION

68.    The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 286 of the Complaint.

69.    In response to paragraph 287 of the Complaint, the Pilling Defendants admit only that Brek Pilling possesses a controlling interest in Budget Truck.

70.    The Pilling Defendants deny the allegations set forth in paragraphs 288, 289, 290, 291, and 292 of the Complaint.

## EIGHTH CAUSE OF ACTION

71.    The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 293 of the Complaint.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 12**
4938-3797-9067

72.    The Pilling Defendants deny the allegations set forth in paragraphs 294 and 295 of the Complaint.

## NINTH CAUSE OF ACTION

73.    The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 296 of the Complaint.

74.    With respect to the allegations set forth in paragraphs 297, 298, and 299 of the Complaint, the Pilling Defendants state that no response is required pursuant to Federal Rule of Civil Procedure 8(b)(1). To the extent that any response is required, the Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in said paragraphs and therefore deny the same.

## TENTH CAUSE OF ACTION

75.    The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 300 of the Complaint.

76.    With respect to the allegations set forth in paragraphs 301 and 302 of the Complaint, the Pilling Defendants state that no response is required pursuant to Federal Rule of Civil Procedure 8(b)(1). To the extent that any response is required, the Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in said paragraphs and therefore deny the same.

77.    The Pilling Defendants are without sufficient information at this time to admit or deny the allegations regarding Defendant Dille's actions as set forth in paragraph 303 of the Complaint and therefore deny the same. The Pilling Defendants affirmatively deny that any actions that were taken by Defendant Dille were for the purpose of concealing unlawful accounting practices or the retention of money due to Plaintiff.

78.     With respect to the allegations set forth in paragraphs 304 and 305 of the Complaint, the Pilling Defendants state that no response is required pursuant to Federal Rule of Civil Procedure 8(b)(1). To the extent that any response is required, the Pilling Defendants are without sufficient information at this time to admit or deny the allegations regarding whether Plaintiff is entitled to injunctive relief or money damages against Defendant Dille as alleged in paragraphs 304 and 305 of the Complaint and therefore deny the same. The Pilling Defendants affirmatively deny that Plaintiff is entitled to injunctive relief and damages against the Pilling Defendants for any actions that were taken by Defendant Dille.

## ELEVENTH CAUSE OF ACTION

79.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 306 of the Complaint.

80.     With respect to the allegations set forth in paragraphs 307 and 308 of the Complaint, the Pilling Defendants state that no response is required pursuant to Federal Rule of Civil Procedure 8(b)(1). To the extent that any response is required, the Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in said paragraphs and therefore deny the same.

81.     With respect to the allegations set forth in paragraphs 309 and 310 of the Complaint, the Pilling Defendants state that no response is required pursuant to Federal Rule of Civil Procedure 8(b)(1). To the extent that any response is required, the Pilling Defendants are without sufficient information at this time to admit or deny the allegations regarding whether Plaintiff is entitled to injunctive relief or money damages against Defendant Shoemaker as alleged in paragraphs 309 and 310 of the Complaint and therefore deny the same. The Pilling Defendants affirmatively deny that Plaintiff is entitled to injunctive relief and damages against the Pilling

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 14**
4938-3797-9067

Defendants for any actions that were taken by Defendant Shoemaker.

## TWELFTH CAUSE OF ACTION

82.     The Pilling Defendants reassert and re-allege by reference their answers and responses to the respective paragraphs incorporated in paragraph 311 of the Complaint.

83.     With respect to the allegations set forth in paragraphs 312, 313, 314, and 315 of the Complaint, the Pilling Defendants state that no response is required pursuant to Federal Rule of Civil Procedure 8(b)(1). To the extent that any response is required, the Pilling Defendants are without sufficient information at this time to admit or deny the allegations set forth in said paragraphs and, therefore, deny the same.

84.     The Pilling Defendants are without sufficient information at this time to admit or deny the allegations regarding whether Plaintiff is entitled to money damages against Defendant Wickersham as set forth in paragraph 316 of the Complaint and therefore deny the same. The Pilling Defendants affirmatively deny that Plaintiff is entitled to damages against the Pilling Defendants for any actions that were taken by Defendant Wickersham.

## JURY DEMAND

85.     With respect to the allegations set forth in paragraph 317 of the Complaint, the Pilling Defendants respond that a trial by jury is proper on all issues so triable.

## ATTORNEYS FEES

86.     The Pilling Defendants deny the allegations set forth in paragraph 318 of the Complaint.

## AFFIRMATIVE DEFENSES

By pleading the following affirmative defenses, the Pilling Defendants do so for the purpose of responding to the Complaint and do not concede that the Pilling Defendants have the burden of

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 15**

proof on any such defense. The Pilling Defendants hereby reserve the right to amend this Answer, pursuant to the applicable Federal Rules of Civil Procedure, to include additional affirmative defenses as may be disclosed or discovered in the course of additional investigation and discovery. Likewise, the Pilling Defendants allege the following defenses for the purpose of preserving the same and specifically reserve the right to abandon any affirmative defense pled in this Answer that may be shown to be inapplicable after additional investigation and discovery takes place.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part because it committed material breach of contract.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part because it violated the covenant of good faith and fair dealing.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part because Plaintiff's authorized agent and representative, Grant R. Flaharty ("Flaharty"), fraudulently induced Defendants Kodiak America, LLC; BAUB, LLC; and Brek Pilling to execute the Asset Purchase Agreement on September 29, 2021. Brek Pilling had represented to Flaharty that he was unwilling to close on that date because payments on certain contracts, specifically including the "Nevada 7" and Lubbock contracts, were expected in the time period shortly thereafter. The work on said contracts had already been completed, and Brek Pilling desired to set closing for a date after payment on said contracts was received. Flaharty represented to Brek Pilling that Defendant Kodiak America, LLC would be entitled to retain the payments received on said contracts notwithstanding the provisions of the Asset Purchase Agreement. Brek Pilling, both in his individual capacity and in his capacity as

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 16**

the representative of Defendants Kodiak America, LLC and BAUB, LLC, reasonably relied on the representations of Flaharty and executed the Asset Purchase Agreement on September 29, 2021, based on Flaharty's representations.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part by the doctrines of waiver, estoppel, and unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part by Plaintiff's own negligence.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part by the doctrines of contributory responsibility and/or comparative responsibility.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part by the acts or omissions of parties to this action other than the Pilling Defendants.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part by the acts or omissions of non-parties to this action.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damage proximately caused by any act or omission of the Pilling Defendants.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate its damages, if any.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 17**
4938-3797-9067

## ELEVENTH AFFIRMATIVE DEFENSE

Any and all of Plaintiff's claims that are not barred in whole must be set off against all damages the Pilling Defendants, or any of them, has incurred as a result of Plaintiff's conduct.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred in whole or in part by the doctrines of waiver, estoppel, ratification, election of remedies, voluntary payment, failure of consideration, release, consent, unclean hands, bad faith, failure to satisfy contractual conditions precedent, and/or failure to provide contractually required notice.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, defenses, and alleged right of setoff are barred or limited because Plaintiff failed to validly exercise any right of setoff under § 9.8 of the Asset Purchase Agreement. Plaintiff failed to satisfy the contractual requirements for exercising any such right, including the requirement that Plaintiff provide notice specifying in reasonable detail the basis for the claimed setoff. Plaintiff further failed to act in good faith with respect to any attempted or claimed exercise of setoff. In addition, § 9.8 of the Asset Purchase Agreement applies only to amounts owed to Seller or any Owner and does not apply to amounts owed by Plaintiff to PFT.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred or limited, in whole or in part, by the doctrines of voluntary payment, waiver, ratification, and election of remedies. To the extent Plaintiff made payments under the Asset Purchase Agreement or related agreements after learning of, or being placed on notice of, the facts on which its claims are based, Plaintiff waived, ratified, elected to proceed with, or is otherwise barred from recovering amounts inconsistent with those payments.

## ATTORNEY FEES

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 18**

4938-3797-9067

The Pilling Defendants have been required to retain the law firms of STOVER, GADD & ASSOCIATES, PLLC and SNELL & WILMER L.L.P. to defend against the Complaint and are entitled to recover reasonable costs and attorney fees in defense of this litigation pursuant to applicable statutes and court rules including, but not limited to, Idaho law and Federal Rule of Civil Procedure 54.

## PRAYER FOR JUDGMENT

WHEREFORE, the Pilling Defendants pray for judgment as follows:

1.    That Plaintiff's Complaint be dismissed with prejudice and that Plaintiff take nothing thereby; and

2.    That the Pilling Defendants be awarded their costs of suit and attorney fees under the Federal Rules of Civil Procedure and all other applicable statutes and rules; and

3.    For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

Counterclaimants Brek Pilling; Kodiak America, LLC, now known as KAM MFG LLC; and PFT Enviro Investments, LLC, as and for their counterclaims against Counterclaim Defendants SRM-KODIAK America, LLC; Lawrence Wayne Powell, Jr., also known as Lawrence W. Powell; Kurt Harman; Jonathan Price; Kodiak America, LLC, a Texas limited liability company; and Brian L. Tibbets, allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Brek Pilling ("Brek") is an individual residing in Cassia County, Idaho.

2.    Kodiak America, LLC is the former name of KAM MFG LLC ("KAM"), a Delaware limited liability company that maintains its principal place of business in Minidoka County, Idaho. KAM is the entity Plaintiff refers to in its Complaint as "Sold Kodiak."

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 19**
4938-3797-9067

3. PFT Enviro Investments, LLC ("PFT") is an Idaho limited liability company that maintains its principal place of business in Minidoka County, Idaho.

4. SRM-KODIAK America, LLC ("SRM") is an Idaho limited liability company that maintains its principal place of business in Minidoka County, Idaho.

5. Upon information and belief, it is alleged that Lawrence Wayne Powell, Jr., aka Lawrence W. Powell ("Powell"), is an individual residing in the State of Texas.

6. Upon information and belief, it is alleged that Kurt Harman ("Harman") is an individual residing in the State of Idaho.

7. Upon information and belief, it is alleged that Jonathan Price ("Price") is an individual residing in the State of Idaho.

8. Upon information and belief, it is alleged that Counterclaim Defendant Kodiak America, LLC ("Kodiak Texas") is a Texas limited liability company that maintains its principal place of business in Texas.

9. Upon information and belief, it is alleged that Brian L. Tibbets ("Tibbets") is an individual residing in the State of Utah.

10. This Court has general and/or specific personal jurisdiction and supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) because the counterclaims form part of the same case or controversy alleged in the Complaint.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## COUNT I
## Breach of Contract
## (Alleged by Brek Against SRM)

12. Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 20**
4938-3797-9067

13.     On September 29, 2021, SRM executed a certain Asset Purchase Agreement to which Brek, KAM, and BAUB, LLC were parties (the "Asset Purchase Agreement").

14.     The terms of the Asset Purchase Agreement are confidential and are not quoted herein. The Asset Purchase Agreement has been submitted to the Court under seal, and its relevant terms are incorporated and alleged by reference.

15.     SRM owed contractual obligations to Brek under the Asset Purchase Agreement, including confidential obligations that prohibited SRM, directly or indirectly, from disparaging Brek.

16.     At all relevant times, John Stokes ("Stokes") acted as an officer, employee, agent, representative, and/or person authorized to act on behalf of SRM.

17.     In approximately late 2022 or early 2023, Stokes learned that David Baker ("Baker") was involved in, or was considering becoming involved in, a business relationship with Brek related to Borah Manufacturing, LLC.

18.     At the time, Brek's relationship with Baker was concrete and economically meaningful, not speculative: Brek and Baker had exchanged information, evaluated business terms and taken steps toward a business relationship involving Borah Manufacturing, LLC from which Brek reasonably expected to receive economic benefits, including compensation, ownership value, profits, financing, business opportunities, or other consideration.

19.     After learning of Baker's business relationship or prospective business relationship with Brek, Stokes contacted Baker concerning Brek, SRM, and matters arising out of or relating to the Asset Purchase Agreement.

20.     Stokes contacted Baker for the purpose and with the effect of dissuading Baker from doing business with Brek.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 21**
4938-3797-9067

21.     During those communications, Stokes made negative and disparaging statements concerning Brek. Among other things, Stokes told Baker, in substance, that Stokes and/or SRM had an arrangement with Brek and that Brek had acted contrary to that arrangement.

22.     Stokes further told Baker, in substance, that things were not going well between SRM and Brek, that Brek had purportedly made misrepresentations concerning equipment, payments, and other matters relating to the parties' transaction, that Brek's conduct was purportedly dishonest and unfair, and that Baker should not do business with Brek.

23.     The substance and tone of Stokes's statements communicated to Baker that Brek was dishonest, lacked integrity, was not trustworthy, and was not a suitable business partner.

24.     Stokes's statements were not limited to neutral statements concerning the existence of a dispute or litigation. Stokes affirmatively sought to influence Baker's business decisions concerning Brek and to discourage Baker from continuing or expanding his business relationship with Brek by disparaging him.

25.     Baker understood Stokes's communications as an effort to cause Baker to shy away from Brek and to take a different view of Brek than Baker had developed from his own dealings with Brek.

26.     Stokes's statements constituted disparagement of Brek in violation of SRM's obligations under the Asset Purchase Agreement.

27.     Stokes's statements caused Baker to question his relationship with Brek, and Baker later withdrew from and terminated his business relationship with Brek.

28.     Stokes's statements were a substantial and material factor contributing to Baker's withdrawal from and termination of his business relationship with Brek.

29.     As a direct and proximate result of SRM's breach of the Asset Purchase

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 22**

4938-3797-9067

Agreement, Brek sustained damages, including lost business opportunities, lost business relationships, lost expected economic benefits associated with Borah Manufacturing, LLC, reputational harm, amounts lost or unpaid in connection with the separation from Baker and/or Borah Manufacturing, LLC, and other damages to be proven at trial.

30. Brek has suffered irreparable injury and may continue to suffer irreparable injury if SRM, directly or indirectly through its officers, employees, agents, and representatives, further disparages Brek in violation of the Asset Purchase Agreement. Such injury includes reputational harm, loss of goodwill, impairment of existing and prospective business relationships, and loss of business opportunities that are difficult to quantify and not fully compensable by money damages.

31. Brek is entitled to judgment against SRM for damages in an amount to be proven at trial, together with permanent injunctive relief prohibiting SRM, directly or indirectly through its officers, employees, agents, or representatives, from disparaging Brek in violation of the Asset Purchase Agreement, and such other relief as the Court deems just.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE
### (Alleged by Brek against SRM)

32. Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

33. Brek had an existing and prospective business relationship and economic expectancy with David Baker relating to Borah Manufacturing, LLC, including a concrete and probable expectancy of economic benefit through compensation, ownership value, profits, financing, business opportunities, or other considerations.

34. SRM, through Stokes, knew of Brek's existing and prospective business

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 23**
4938-3797-9067

relationship and economic expectancy with Baker.

35.    SRM, through Stokes, intentionally interfered with Brek's existing and prospective business relationship and economic expectancy with Baker by contacting Baker, affirmatively making disparaging statements concerning Brek, and expressly attempting to dissuade Baker from doing business with Brek.

36.    SRM's interference was wrongful and improper because, among other things, Stokes used improper means and acted for an improper purpose by making disparaging statements that were not limited to neutral statements concerning a business dispute or litigation, but instead communicated that Brek was dishonest, lacked integrity, was not trustworthy, and was not a suitable business partner.

37.    SRM's interference was also wrongful and improper because the disparaging statements were made in violation of SRM's contractual obligations under the Asset Purchase Agreement.

38.    SRM's conduct caused Baker to question his relationship with Brek and was a substantial and material factor contributing to Baker's withdrawal from and termination of his business relationship with Brek.

39.    As a direct and proximate result of SRM's tortious interference, Brek sustained damages, including lost business opportunities, lost business relationships, lost expected economic benefits associated with Borah Manufacturing, LLC, reputational harm, amounts lost or unpaid in connection with the separation from Baker and/or Borah Manufacturing, LLC, and other damages to be proven at trial.

40.    Brek is entitled to judgment against SRM in an amount to be proven at trial and such other relief as the Court deems just.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 24**
4938-3797-9067

## COUNT III
## FRAUD
**(Alleged by KAM against SRM, Powell, Tibbets, and Kodiak Texas)**

41.     Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

42.     Prior to the asset sale in September 2021, KAM received a supply order from India pursuant to which KAM was awarded a contract for the delivery of equipment to Border Roads Organization in India (the "India Contract").

43.     Pursuant to the terms of the India Contract, KAM was to receive payment of the purchase price in two installments. The first payment, consisting of 85% of the total contract amount, would be made when the machines were delivered, and the second payment, consisting of the remaining 15% balance, would be made after the warranty period expired, in approximately March 2024.

44.     KAM's rights under the India Contract were included among the assets purchased by SRM in 2021 under the Asset Purchase Agreement.

45.     After the Asset Purchase Agreement was signed in September 2021, SRM requested that KAM pay certain costs associated with the India Contract.

46.     The parties agreed that KAM would pay certain costs incurred by SRM and that KAM would reimburse itself for those costs when it received payment from the buyer under the India Contract, which funds were to be wired into KAM's bank account at Wells Fargo Bank (the "KAM Account"). KAM would then remit to SRM the remaining balance of the payment received under the India Contract.

47.     Because the nature and terms of the India Contract required payment to be made in KAM's name and deposited into KAM's Wells Fargo account, the proceeds from the India

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 25**

4938-3797-9067

Contract were to be paid to SRM only after they had been received by KAM and after KAM reimbursed itself for the costs it had paid in connection with the India Contract.

48.    In reliance on the parties' agreement concerning the India Contract proceeds, KAM paid the costs requested by SRM, the total unreimbursed amount of which exceeds $700,000. Under that agreement, the India Proceeds were to be paid into the KAM Account, and KAM was to reimburse itself before remitting any remaining balance to SRM.

49.    In approximately March 2023, Powell and/or Tibbets formed Kodiak Texas. Kodiak Texas is a Texas limited liability company with its stated principal place of business at 310 South County Road 810, Alvarado, Texas. Powell is identified as the manager of Kodiak Texas and is an owner of the real property located at 310 South County Road 810, Alvarado, Texas.

50.    The legal name of Kodiak Texas is "Kodiak America, LLC," which is identical to KAM's former legal name. Upon information and belief, and based on the identical legal name, the timing of Kodiak Texas's formation, Powell's role as manager of Kodiak Texas, Tibbets's prior status as an authorized signer on the KAM Account, the opening of the Kodiak Texas Account at Wells Fargo, and the subsequent deposit of the India Proceeds into the Kodiak Texas Account, KAM alleges that Powell and Tibbets formed Kodiak Texas, or caused it to be formed, for the purpose of confusing and deceiving Wells Fargo and the buyer under the India Contract.

51.    On or about March 29, 2023, Powell and Tibbets, acting for and on behalf of Kodiak Texas, opened a Wells Fargo Navigate Business Checking Account with account number ending in 8701 (the "Kodiak Texas Account") using Kodiak Texas's EIN.

52.    Powell's formation and management of Kodiak Texas, together with his participation in opening the Kodiak Texas Account under the name "Kodiak America, LLC,"

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 26**
4938-3797-9067

supplied the means by which the India Proceeds were later diverted from the KAM Account to the Kodiak Texas Account.

53.    Tibbets had previously been an authorized signer on the KAM Account. As a result, there were two separate entities, both named "Kodiak America, LLC" and both of which were or had been affiliated with Tibbets, that maintained bank accounts with Wells Fargo.

54.    In approximately February 2024, Powell, Tibbets, Kodiak Texas, and SRM agreed, planned, coordinated, and acted in concert to divert money paid by the buyer under the India Contract to the Kodiak Texas Account by means of false or misleading pretenses, representations, omissions, and wire-transfer instructions. Specifically, Tibbets provided, or caused to be provided, documentation and wire-transfer information representing that payment to the Kodiak Texas Account would satisfy the buyer's payment obligation to "Kodiak America, LLC" under the India Contract, even though the account belonged to Kodiak Texas rather than KAM and KAM had not authorized Kodiak Texas, Powell, Tibbetts or SRM to redirect the India Proceeds to that account. Upon information and belief, SRM knew of and approved Tibbets's efforts to recover the India Proceeds before the India Proceeds were transmitted to the Kodiak Texas Account. The precise communications among Powell, Tibbets, Kodiak Texas, and SRM are presently within their possession, custody, or control and are expected to be confirmed through discovery.

55.    Upon information and belief, KAM alleges that in approximately February 2024 Tibbets presented Wells Fargo Bank with documentation showing that "Kodiak America, LLC" was due money under the India Contract, including documentation associated with KAM, KAM's former legal name, KAM's Idaho address, and/or the India Contract awarded to KAM. KAM bases this allegation on, among other things, the Wells Fargo credit advice dated February

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 27**
4938-3797-9067

28, 2024, identifying the payee as "Kodiak America LLC" at KAM's Idaho address and the subsequent deposit of the India Proceeds into the Kodiak Texas Account rather than the KAM Account.

56.    Even though KAM was to receive the money due under the India Contract, and even though KAM had not authorized payment to the Kodiak Texas Account, Tibbets knowingly provided wire-transfer information for the Kodiak Texas Account.

57.    Tibbets intended Wells Fargo and the buyer under the India Contract to believe and rely on the false impression that the documentation and wire-transfer instructions he provided directed payment to the KAM Account. Powell and Kodiak Texas knew, authorized, ratified, or participated in that conduct by forming and managing Kodiak Texas, opening and maintaining the Kodiak Texas Account under the identical "Kodiak America, LLC" name, accepting the India Proceeds into that account, and withdrawing, transferring, or causing the transfer of a substantial portion of those proceeds. SRM knew of, authorized, ratified, participated in, or benefitted from the same conduct, including by seeking to obtain the India Proceeds without allowing KAM to receive the funds and reimburse itself first for costs pain in connection with the India Contract.

58.    Neither Wells Fargo Bank, the buyer under the India Contract, nor KAM knew that Tibbets had provided wire-transfer information for the Kodiak Texas Account rather than the KAM Account, and KAM did not learn of the redirection in time to prevent the India Proceeds from being deposited into the Kodiak Texas Account.

59.    On or about February 28, 2024, after receiving the wire-transfer instructions provided by Tibbets, the buyer under the India Contract initiated an international trade payment in the amount of approximately $774,430.23 (the "India Proceeds").

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 28**

60.     In reliance upon the false and misleading representations, omissions, and wire-transfer information provided by Tibbets, the buyer under the India Contract transmitted the India Proceeds to Wells Fargo, and Wells Fargo deposited the India Proceeds into the Kodiak Texas Account rather than the KAM Account. As intended, KAM was thereby deprived of receipt, control, and use of the India Proceeds, including KAM's right to reimburse itself for costs paid in connection with the India Contract before remitting any remaining balance to SRM.

61.     Tibbets, Powell, or both thereafter withdrew, transferred, or caused to be withdrawn or transferred approximately $634,000 of the India Proceeds (the "Withdrawn Funds") from the Kodiak Texas Account, leaving a remaining balance of approximately $140,000 of the India Proceeds in the Kodiak Texas Account (the "Remaining Funds").

62.     Upon information and belief, KAM alleges that Tibbets and/or Powell transferred, delivered, or otherwise conveyed all or a portion of the Withdrawn Funds to SRM, or otherwise caused SRM to receive the benefit of all or a portion of the Withdrawn Funds, in furtherance of the agreement, plan, and common design of Powell, Tibbets, SRM, and Kodiak Texas.

63.     The Remaining Funds, including the $134,869.09 deposited with the Court pursuant to the Court's Order Authorizing Deposit of Funds with the Court (Doc. 59), constitute India Proceeds that should have been deposited into the KAM Account and applied first to reimburse KAM for costs paid in connection with the India Contract.

64.     As a result of the fraudulent conduct alleged herein, including the fraudulent conduct of Powell and Tibbets, KAM has been damaged in an amount in excess of $75,000, including but not limited to its unreimbursed costs paid in connection with the India Contract, lost use of the India Proceeds, interest, and other damages to be proven at trial.

65.     SRM and Kodiak Texas are jointly and severally liable for the fraudulent conduct

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 29**
4938-3797-9067

of Powell and Tibbets because Powell, Tibbets, SRM, and Kodiak Texas acted in concert or pursuant to an agreement, plan, or common design existing at the time of the fraudulent conduct alleged herein. The agreement, plan, or common design was to divert the India Proceeds from the KAM Account to the Kodiak Texas Account, thereby depriving KAM of receipt, control, and use of the India Proceeds, including KAM's right to reimburse itself for costs paid in connection with the India Contract before remitting any remaining balance to SRM. Alternatively, Powell, Tibbets, SRM, and Kodiak Texas agreed to accomplish the collection or recovery of the India Proceeds by unlawful means, including false or misleading pretenses, representations, omissions, and wire-transfer instructions. Powell and Tibbets also acted as agents of SRM and/or Kodiak Texas in connection with that conduct, and SRM and Kodiak Texas ratified or accepted the benefits of that conduct by claiming, retaining, receiving, controlling or benefitting from the India Proceeds or traceable proceeds.

**COUNT IV**
**Conversion**
**(Alleged by KAM against SRM, Powell, Tibbets, and Kodiak Texas in the Alternative)**

66.     Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

67.     KAM had the immediate right to receive, possess, control and use the India Proceeds, at least to the extent necessary to reimburse itself for the costs and expenses KAM paid in connection with the India Contract before remitting any remaining balance to SRM.

68.     The India Proceeds were specific, identifiable funds in the approximate amount of $774,430.23 paid by the buyer under the India Contract on or about February 28, 2024 and deposited into the Kodiak Texas Account instead of the KAM Account.

69.     SRM, Powell, Tibbets and/or Kodiak Texas wrongfully exercised dominion or control over the India Proceeds by directing, depositing, receiving withdrawing, transferring,

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 30**
4938-3797-9067

claiming, retaining, controlling or benefitting from those funds, or by causing others to do so, without KAM's authorization.

70.    KAM did not authorize the India Proceeds to be deposited into the Kodiak Texas Account, did not authorize SRM, Powell, Tibbets or Kodiak Texas to withdraw of transfer those proceeds, and did not consent to the use of those proceeds before KAM reimbursed itself for costs paid in connection with the India Contract.

71.    To the extent a demand is required, KAM demanded, and by this Counterclaim demands, return, disgorgement, and/or turnover of the India Proceeds and traceable proceeds, including the Remaining Funds deposited with the Court.

72.    As a direct and proximate result of the conversion alleged herein, KAM has been damaged in an amount in excess of $75,000, including its unreimbursed costs paid in connection with the India Contract, lost use of the India Proceeds, interest, and other damages to be proven at trial.

73.    KAM is entitled to judgment against SRM, Powell, Tibbets and Kodiak Texas in an amount to be proven at trial, together with restitution, disgorgement, imposition of a constructive trust and/or equitable lien against the India Proceeds and traceable proceeds, including the Remaining Funds deposited with the Court and such other relief as the Court deems just.

**COUNT V**
**Breach of Contract**
**(Alleged by KAM against SRM)**

74.    Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

75.    After execution of the Asset Purchase Agreement, SRM requested that KAM pay

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 31**
4938-3797-9067

certain costs and expenses associated with the India Contract for SRM's benefit.

76.    SRM promised and agreed that KAM would be reimbursed for the costs and expenses KAM paid in connection with the India Contract.

77.    KAM and SRM further agreed that KAM would reimburse itself for those costs and expenses from the proceeds received under the India Contract before remitting any remaining balance to SRM.

78.    KAM agreed to pay costs and expenses associated with the India Contract in consideration of SRM's promise and agreement that KAM would be reimbursed from the India Contract proceeds before remitting any remaining balance to SRM.

79.    KAM performed its obligations under the parties' agreement by paying costs and expenses associated with the India Contract for SRM's benefit.

80.    The total unreimbursed costs and expenses paid by KAM in connection with the India Contract exceed $700,000.

81.    SRM breached the parties' agreement by failing and refusing to reimburse KAM for the costs and expenses KAM paid in connection with the India Contract.

82.    SRM further breached the parties' agreement by claiming, retaining, receiving, or benefitting from India Contract proceeds without first reimbursing KAM for the costs and expenses KAM paid in connection with the India Contract.

83.    SRM has asserted that it was entitled to withhold payment or reimbursement to KAM based on an alleged right of setoff under the Asset Purchase Agreement.

84.    SRM did not validly exercise any right of setoff against the amounts owed to KAM under the parties' reimbursement agreement. Among other things, SRM failed to provide contractually required notice specifying in reasonable detail the basis for any claimed setoff and

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 32**

had no contractual or legal basis to apply any alleged setoff to the India Contract proceeds before KAM reimbursed itself for the costs and expenses KAM paid in connection with the India Contract.

85.    To the extent SRM contends it exercised a right of setoff, any such exercise was not made in good faith. SRM knew or should have known that KAM had paid substantial costs and expenses associated with the India Contract for SRM's benefit, that KAM was entitled to reimburse itself from the India Contract proceeds before remitting any remaining balance to SRM, and that SRM's claimed setoff would deprive KAM of reimbursement for those costs and expenses.

86.    SRM's alleged setoff was improper, disputed, not validly exercised, not exercised in good faith, and does not excuse SRM's breach of the parties' reimbursement agreement or defeat KAM's right to recover the unreimbursed costs and expenses KAM paid in connection with the India Contract.

87.    The Remaining Funds, including the $134,869.09 deposited with the Court pursuant to the Court's Order Authorizing Deposit of Funds with the Court (Doc. 59), constitute India Proceeds that should have been deposited into the KAM Account and applied first to reimburse KAM for costs and expenses paid in connection with the India Contract.

88.    To the extent SRM contends KAM's claim is governed by Article 9 of the Asset Purchase Agreement, KAM alleges that it has demanded, or by this Counterclaim demands, reimbursement, indemnification, and/or application of the India Proceeds first to KAM's unreimbursed costs and expenses; that SRM has not been materially or substantially prejudiced by any alleged defect in the timing, form, or content of any prior demand or notice; and that KAM pleads this claim in the alternative under F.R.C.P. 8(d)(2) and 8(d)(3) to reserve all

contractual and equitable bases for recovery.

89.    As a direct and proximate result of SRM's breach of contract, KAM has sustained damages in an amount to be proven at trial.

90.    KAM is entitled to judgment against SRM in an amount to be proven at trial, together with an award of the Remaining Funds, interest, and such other relief as the Court deems just.

## COUNT VI
### Unjust Enrichment
### (Alleged by KAM against SRM, Powell, Tibbets, and Kodiak Texas, in the Alternative)

91.    Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

92.    This claim is pleaded in the alternative to KAM's claims for breach of contract and other legal remedies.

93.    KAM paid costs and expenses associated with the India Contract for SRM's benefit and with the understanding and agreement that KAM would reimburse itself from the India Contract proceeds before remitting any remaining balance to SRM.

94.    The India Proceeds were not deposited into the KAM Account and were not applied first to reimburse KAM for the costs and expenses KAM paid in connection with the India Contract.

95.    Instead, SRM, Powell, Tibbets, and/or Kodiak Texas received, retained, claimed, controlled, benefitted from, or caused the transfer of the India Proceeds or a portion thereof.

96.    KAM has not been reimbursed for the costs and expenses it paid in connection with the India Contract.

97.    To the extent SRM, Powell, Tibbets, and/or Kodiak Texas contend that no

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 34**

4938-3797-9067

enforceable contract governs KAM's right to reimbursement from the India Proceeds, or to the extent the Court determines that KAM lacks an adequate remedy at law under an enforceable contract, SRM, Powell, Tibbets, and/or Kodiak Texas have been unjustly enriched at KAM's expense.

98.     It would be inequitable for SRM, Powell, Tibbets, and/or Kodiak Texas to retain the benefit of the India Proceeds, or any portion thereof, without reimbursing KAM for the costs and expenses KAM paid in connection with the India Contract.

99.     KAM is entitled to restitution, disgorgement, imposition of a constructive trust and/or equitable lien against the India Proceeds and traceable proceeds, including the Remaining Funds deposited with the Court, and such other equitable relief as the Court deems just.

**COUNT VII**
**Breach of Contract**
**(Alleged by PFT against SRM)**

100.    Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

101.    PFT is the payee, holder, and person entitled to enforce that certain Promissory Note in the principal amount of $8,000,000.00 dated April 1, 2022, a true and correct copy of which has been submitted to the Court under seal and is incorporated by reference herein..

102.    The Note obligates SRM to make monthly interest-only payments beginning May 1, 2022, and continuing on the first day of each month thereafter until the principal amount is paid in full.

103.    The Note further obligates SRM to make annual principal payments of $1,000,000.00 beginning January 27, 2023 and continuing each January 27 thereafter until all principal and interest is paid in full.

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 35**

104.    SRM defaulted on its obligations under the Note by failing and refusing to make the payments required thereunder.

105.    PFT provided written notice of SRM's default on September 26, 2022, and again, through counsel, on January 17, 2023.

106.    SRM failed to cure its default within fifteen (15) days after written notice of default was provided.

107.    Pursuant to the terms of the Note, SRM's obligations under the Note were accelerated, such that the principal balance of the Note, together with all accrued but unpaid interest and all other amounts due under the Note, became immediately due and payable on October 11, 2022.

108.    Interest has been accruing, and is continuing to accrue, on the principal amount of the Note at the default rate of twelve percent (12%) per annum since October 11, 2022.

109.    SRM asserts that it possesses a right of setoff under § 9.8 of the Asset Purchase Agreement and that said right may be exercised relative to SRM's obligations under the Note.

110.    The right of setoff provided under § 9.8 of the Asset Purchase Agreement pertains to "any amounts owed to Seller or any Owner, whether under this Agreement or otherwise."

111.    The terms "Seller" and "Owner" are defined terms under the Asset Purchase Agreement. The term "Seller" refers solely to KAM, and the term "Owner" refers to BAUB and Brek.

112.    PFT is neither the Seller nor an Owner under the Asset Purchase Agreement, and the right of setoff provided under § 9.8 of the Asset Purchase Agreement does not apply to amounts owed by SRM to PFT under the Note.

113.    In addition, SRM did not validly exercise any right of setoff against amounts

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 36**
4938-3797-9067

owed under the Note. Among other things, SRM failed to provide contractually required notice specifying in reasonable detail the basis for any claimed setoff against amounts owed under the Note.

114.    To the extent SRM contends it exercised a right of setoff against amounts owed under the Note, any such exercise was not made in good faith. SRM knew or should have known that § 9.8 of the Asset Purchase Agreement did not authorize SRM to set off alleged amounts owed by KAM, BAUB, or Brek against amounts owed to PFT under the Note.

115.    SRM's alleged setoff was improper, disputed, not validly exercised, not exercised in good faith, and does not excuse SRM's failure to make the payments required under the Note.

116.    As of May 1, 2024, the total principal and interest due and owing under the Note exceeded $9,600,000.

117.    As a direct and proximate result of SRM's breach of the Note, PFT has sustained damages in an amount to be proven at trial.

118.    PFT is entitled to entry of judgment against SRM in an amount to be proven at trial, together with interest and such other relief as the Court deems just.

## COUNT VIII
### Breach of Contract
### (Alleged by PFT against Powell, Harman, and Price)

119.    Counterclaimants reallege by reference each and every allegation contained in the above paragraphs and incorporate the same as if fully set forth herein.

120.    On or about April 1, 2022, Powell, Harman, and Price signed that certain Personal Guaranty, a true and correct copy of which has been submitted to the Court under seal and is incorporated by reference herein (the "Guaranty").

121.    Pursuant to the terms of the Guaranty, Powell, Harman, and Price jointly and

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 37**

4938-3797-9067

severally guaranteed the payment by SRM of all sums due or to become due under the Note.

122.    The Guaranty is an absolute, continuing, and unconditional guaranty and remains in effect until full and complete payment of all sums due to PFT under the Note.

123.    Under the Guaranty, no act or thing, except full payment and discharge of all obligations, exonerates Powell, Harman, or Price, or modifies, reduces, limits, or releases their liability.

124.    Under the Guaranty, Powell, Harman, and Price waived defenses, claims, and discharges of SRM or any other obligor pertaining to the obligations, including any setoff available against PFT to SRM or any other person, whether or not on account of a related transaction.

125.    Under the Guaranty, PFT may proceed directly and independently against Powell, Harman, and Price, or any of them, without first resorting to or exhausting any other security, collateral, right, or remedy, and without further notice or demand.

126.    SRM defaulted on its obligations under the Note by failing and refusing to make the payments required thereunder.

127.    PFT provided written notice of SRM's default to Powell, Harman, and Price on January 17, 2023, and demanded payment.

128.    Powell, Harman, and Price have failed and refused to pay the amounts due under the Note.

129.    Powell, Harman, and Price assert, or are expected to assert, that SRM's alleged right of setoff under § 9.8 of the Asset Purchase Agreement excuses their obligations under the Guaranty.

130.    SRM's alleged right of setoff does not excuse Powell's, Harman's, or Price's

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 38**

4938-3797-9067

obligations under the Guaranty. Among other things, § 9.8 of the Asset Purchase Agreement does not apply to amounts owed to PFT under the Note; SRM did not validly exercise any setoff against amounts owed under the Note; any attempted or alleged setoff was not exercised in good faith; and Powell, Harman, and Price waived defenses based on any setoff available to SRM or any other obligor against PFT.

131.    Powell, Harman, and Price have breached the Guaranty by failing and refusing to pay the amounts due under the Note after SRM's default and PFT's demand for payment.

132.    As a direct and proximate result of Powell's, Harman's, and Price's breach of the Guaranty, PFT has sustained damages in an amount to be proven at trial, including amounts due under the Note in excess of $9,600,000, together with continuing interest and other amounts recoverable under the Note and Guaranty.

133.    PFT is entitled to entry of judgment against Powell, Harman, and Price, jointly and severally, in an amount to be proven at trial.

## ATTORNEY FEES

Counterclaimants have been required to retain the law firms of STOVER, GADD & ASSOCIATES, PLLC and SNELL & WILMER L.L.P. to prosecute their Counterclaims and defend against Plaintiff's claims. Counterclaimants are entitled to recover their reasonable attorney fees, costs, and expenses pursuant to the Asset Purchase Agreement, the Promissory Note, the Guaranty, Idaho law, without limitation Idaho Code §§ 12-120 and 12-121, Federal Rule of Civil Procedure 54, the District of Idaho Local Civil Rules, and all other applicable statutes, rules, contracts, and equitable principles.

## PRAYER FOR JUDGMENT

WHEREFORE, Counterclaimants pray for judgment as follows:

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 39**
4938-3797-9067

1.      That Brek be granted judgment against SRM in an amount to be proven at trial;

2.      That Brek be granted permanent injunctive relief prohibiting SRM, directly or indirectly through its officers, employees, agents, or representatives, from disparaging Brek in violation of the Asset Purchase Agreement;

3.      That KAM be granted judgment against SRM, Tibbets, Powell, and Kodiak Texas in amounts to be proven at trial;

4.      That PFT be granted judgment against SRM, Powell, Harman, and Price in an amount to be proven at trial;

5.      That Counterclaimants be awarded their attorney fees, costs, and expenses as allowed by contract, statute, rule, and applicable law;

6.      That Counterclaimants be awarded pre- and post-judgment interest and all other interest on the judgment as allowed by law from the date thereof until fully paid; and

7.      For such other and further relief as the Court may deem just and equitable.

DATED this 9th day of July, 2026.

STOVER, GADD & ASSOCIATES, PLLC

*/s/ David W. Gadd*
David W. Gadd

SNELL & WILMER L.L.P.

Mark O. Morris
Tara Martens Miller
Benjamin J. Mills

*Attorneys for Kodiak America, LLC; Kodiak Northwest, Inc.; BAUB LLC; Brek Pilling; and PFT Enviro Investments, LLC*

**ANSWER AND SECOND AMENDED COUNTERCLAIM – 40**
4938-3797-9067