Lee Radford, ISB #5719
John E. Cutler, ISB #9907
Daniel Biddulph, ISB #11561
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, Idaho 83402
Telephone: 208.522.6700
Facsimile: 208.522.5111
LRadford@parsonsbehle.com
JCutler@parsonsbehle.com
DBiddulph@parsonsbehle.com

*Attorneys for SRM-Kodiak America, LLC; Lawrence Wayne Powell, Jr.; Kurt Harman; Jonathan Price; and Kodiak America, LLC (Texas)*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,

Plaintiff,

vs.

BREK PILLING, an individual; SCOTT PILLING, an individual; KODIAK AMERICA, LLC, a Delaware limited liability company; KODIAK NORTHWEST, INC., an Idaho Corporation; BAUB LLC, an Idaho limited liability company; PFT ENVIRO INVESTMENTS, LLC, an Idaho limited liability company; BUDGET TRUCK CENTER, LLC, an Idaho limited liability company; SAWTOOTH INDUSTRIAL, LLC, an Idaho limited liability company; IIOVIII PRECISION, LLC, an Idaho limited liability company; INTERMOUNTAIN LIVING, LLC, an Idaho limited liability company; BREK PILLING AS TRUSTEE OF THE PILLING FAMILY TRUST, an Idaho Trust; ARTHUR SADAMPI YAMADA, an individual; GARY

Case No. 4:24-cv-00112-DCN

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AGAINST THE SCOTT PILLING DEFENDANTS**

WICKERSHAM, an individual; CAROLYN SHOEMAKER, an individual; LURENE DILLE, an individual; DOE DEFENDANTS I-XX; and ROE ENTITY DEFENDANTS I-XX,

Defendants.

---

KODIAK AMERICA, LLC, a Delaware limited liability company; KODIAK NORTHWEST, INC.; BAUB, LLC; BREK PILLING; and PFT ENVIRO INVESTMENTS, LLC;

Counterclaimants,

vs.

SRM-KODIAK, AMERICA, LLC, an Idaho limited liability company, LAWRENCE WAYNE POWELL, JR., an individual aka Lawrence W. Powell; KURT HARMAN, an individual; JONATHAN PRICE, an individual; KODIAK AMERICA, LLC, a Texas limited liability company; and BRIAN L. TIBBETTS, an individual,

Counterdefendants.

---

SCOTT PILLING; SAWTOOTH INDUSTRIAL, LLC; IIOVIII PRECISION, LLC; and INTERMOUNTAIN LIVING, LLC,

Counterclaimants,

vs.

SRM-KODIAK AMERICA, LLC, an Idaho limited liability company,

Counterdefendant.

Plaintiff SRM-Kodiak America, LLC ("**SRM**"), by and through its undersigned counsel of record, hereby submits this Memorandum[1] in Support of Plaintiff's Motion for Discovery Sanctions Against the Scott Pilling Defendants, arguing as follows:

## INTRODUCTION

"There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). The record now confirms a pattern of fraud and deception by the Scott Pilling Defendants that runs from the marketplace into this litigation. Their willful misconduct—withholding or destroying the native SolidWorks drawing files this Court ordered produced—has made it "impossible for a court to be confident that the parties will ever have access to the true facts." *Id.* The evidence of deceit is in their own discovery responses: they produced roughly four hundred scanned pages of engineering drawings, then denied possession of the native SolidWorks drawing files from which those pages were generated. (Decl. of David Smith ISO Plaintiff's Mot. for Disc. Sanctions Against the Scott Pilling Defendants (October 12, 2026) ("**Smith Sanctions Decl**."), Ex. B.) In September 2025, this Court ordered the Scott Pilling Defendants to produce their design schematics "in their native SolidWorks program format" with functioning feature trees (Dkt. 121, Hearing Minutes (Sep. 10, 2025) ("**Native-Format Order**") at p. 1), but their production in response contained no working native drawing files—the files denoted by the extension ".slddrw." When pressed, the Scott Pilling Defendants, through counsel, reaffirmed that after "a diligent search, no .slddrw SolidWorks files or their equivalents in another program were located." (Decl. of Counsel ISO Plaintiff's Mot. for Disc. Sanctions Against the Scott Pilling

[1] Consistent with local rule 7.1, Plaintiff's memorandum—exclusive of caption and certificate of service—is limited to 20 pages.

Defendants (October 12, 2026) ("**Counsel Sanctions Decl**.") at ¶ 7, Ex. A.) Indeed, they affirmed that they had "fully complied" with the Native-Format Order and had "nothing to hide." (Counsel Sanctions Decl. at ¶¶ 9-10, Ex. C.)

That claim is demonstrably false. The Scott Pilling Defendants had previously produced four hundred pages of scanned prints of engineering drawings, many bearing the "Sawtooth" logo. (*See generally* Smith Sanctions Decl. Ex. B.) A scanned printout cannot exist without a native digital counterpart: committing a SolidWorks drawing to paper "is accomplished one way: by opening the drawing file (.slddrw) in the CAD application and sending it to a printer or a PDF writer." (Smith Sanctions Decl. at ¶ 15.) Many of the sheets name their purported author—the title blocks repeatedly read "K.Rand," the Scott Pilling Defendants' own lead engineer, Kenneth Randall—and bear drawing dates fixing when each native file existed. (*See generally* Smith Sanctions Decl. Ex. B; *see also* Smith Sanctions Decl. ¶ 19.) Their own earlier production proves the falsity of their later denial.

Under the Fourth Amended Scheduling Order, fact discovery closes January 29, 2027; SRM's expert disclosures are due March 15, 2027; and all dispositive motions must be filed by July 1, 2027—a deadline that, "absent good cause, will not be extended." (Dkt. 157, Fourth Amended Scheduling Order (Sept. 21, 2026) ("**Sched. Order**") at ¶¶ 1, 6-7.) A process remedy—another production order, a forensic examination, a special master—would consume what little time remains and convert defiance into a continuance. So SRM asks for the Rule 37(b)(2) sanctions that require nothing further from the wrongdoers or the calendar: (1) an order deeming established the facts the withheld files would prove; (2) a mandatory adverse inference that those files reflect copying; (3) preclusion of the independent-design story the files would have tested; and (4) the fee award the rule makes mandatory.

## FACTS SUPPORTING REQUESTED RELIEF

### I. The Court finds SRM's designs are trade secrets, enjoins use, and warns of contempt.

On February 6, 2025, the Court granted SRM a preliminary injunction. It found that SRM's snow blowers are "unique and worth hundreds of thousands of dollars apiece," that their schematics "have been developed over decades," and concluded: "Thus, SRM possesses trade secrets." (Dkt. 87, Mem. Decision & Order (Feb. 6, 2025) ("**PI Order**") at p. 18.) The Court found that "SRM alleges—and Scott concedes—that Scott has used old Kodiak schematics in his new businesses," and that such schematics "were provided to CMI for manufacturing." (*Id.* at p. 10-11, 19-20.)

The injunction barred the Scott Pilling Defendants from "using or disseminating any of SRM's . . . engineering drawings" and from using "their own materials which have been developed, modified, or improved" from that information, "including any designs where SRM's engineering drawings were used as a 'starting point.'" (*Id.* at p. 25-26.) The Court warned that non-compliant defendants "may be held in contempt." (*Id.* at p. 26.)

### II. Caught testing a copycat machine, the Scott Pilling Defendants ship it out of state despite a preservation order.

On April 23, 2025, SRM's president and two directors found the Scott Pilling Defendants conducting "the final stages of testing on a snow blower loader mount" at a marina in Heyburn, Idaho—a machine incorporating "at least twenty unique design features" distinctive to SRM. (Dkt. 88-1, SRM's Mem. ISO Mot. for Order to Show Cause on Contempt (April 24, 2025) at p. 6, 9.) On that evidence, the Court found "the allegations and evidence . . . suggest serious violations of the preliminary injunction," and declared: "Anything to the contrary will not be tolerated." (Dkt. 92, Mem. Decision and Order (Apr. 30, 2025) at p. 4, 6.)

On May 12, 2025, the Court ordered that "[a]ll work on the snow blower machine tested in Heyburn, Idaho on April 23, 2025, must cease, and the machine must be preserved for inspection," and that the machine "cannot be sold without further order of the Court." (Dkt. 101, Mem. Decision & Order (May 12, 2025) at p. 4–5.) By then the Scott Pilling Defendants had already shipped the machine to "a potential customer in California"—disclosed only at the May 8th hearing, after they had represented the machine had no buyer. (Dkt. 117, Order Re: Mot. to Compel (Aug. 15, 2025) ("**Compel Order**") at p. 2.) When SRM sought the customer's identity, defense counsel "refused to provide the information and denied any obligation to provide" it. (Dkt. 103-1, SRM's Mem. ISO Mot. to Compel (May 13, 2025) ("**Compel Mem**.") at p. 4-5.)

## III. A year's discovery yields 2,313 pages, false assurances, and stripped files—meanwhile the order for native files yields a false denial.

The Scott Pilling Defendants' discovery conduct ran the same course. Their responses were "incomplete and materially misleading"; they represented they were "not withholding any information," when in fact "the prior responses were false and misleading." (Dkt. 103-1, Compel Mem. at p. 3.) After more than a year, their production totaled 2,313 pages against SRM's 70,387. (Dkt. 120, SRM's Overview of Outstanding Disc. Issues (Sep. 8, 2025) ("**Disc. Overview**") at p. 6.) Third-party subpoenas surfaced "invoices, bids, text messages, and other business communications that the Scott Pilling Defendants impliedly denied possessing and did not produce." (*Id.* at p. 7.)

On August 15, 2025, the Court granted SRM's motion to compel (Dkt. 103), finding the materials "relevant, proportional, and within the scope of Plaintiff's discovery requests" and holding that the Scott Pilling Defendants "were required to supplement their responses" under Rule 26(e). (Dkt. 117, Compel Order at p. 5–6.) On September 10, 2025, the Court ordered them to produce, "within 30 days . . . the design schematics of the snow removal machines that they have

developed since January 2021 to the present," and specified that "[p]roduction of these materials shall be made in their native SolidWorks program format and ensure the feature trees' function is available." (Dkt. 121, Native-Format Order at p. 1.) Those minutes "stand as the order of the Court." (*Id.* at p. 2.)

The native format is the point. A SolidWorks feature tree records "the history of how an engineer drew out each design"—"like the fingerprint of an engineering drawing"—and that history "is destroyed when the SolidWorks files are converted to a standardized '.stp' or '.STEP' format." (Dkt. 120, Disc. Overview at p. 7.) Yet in response to the order the Scott Pilling Defendants produced no working ".slddrw" drawing files, and when SRM's counsel pressed, their counsel responded that after "a diligent search, no .slddrw SolidWorks files or their equivalents in another program were located"—asserting that the Native-Format Order had been satisfied. (Counsel Sanctions Decl. at ¶¶ 7, 9, Exs. A, C, D.)

## IV. The Scanned Prints—produced months earlier—prove the denial false: the native drawing files exist.

Months before the Native-Format Order—under a discovery plan that did not mandate native format—the Scott Pilling Defendants had produced PDFs of scanned paper printouts of a limited subset of their engineering drawings (the "**Scanned Prints**," *see* Smith Sanctions Decl. Ex. B). That production is decisive now, because the Scanned Prints prove that the native drawing files the Scott Pilling Defendants could not locate or produce necessarily existed in their files earlier and therefore must have been concealed or destroyed.

SolidWorks builds designs in a fixed sequence. An engineer first models a part (.sldprt) or an assembly (.sldasm) in three dimensions. (Smith Sanctions Decl. at ¶ 13.) To communicate that design, the engineer must then create a separate drawing document, the .slddrw file, which references the model and lays out its two-dimensional views, dimensions, tolerances, annotations,

bill of materials, and title block. (*Id.* at ¶¶ 13–14.) Committing that drawing to paper "is accomplished one way: by opening the drawing file (.slddrw) in the CAD application and sending it to a printer or a PDF writer." (*Id.* at ¶ 15.) "The software provides no path from a 3D model directly to a finished, dimensioned, titled drawing sheet without a drawing file," and every mainstream CAD program works the same way. (*Id.*)

So each Scanned Print sits at the end of a fixed chain—native drawing file, printed to paper, scanned to PDF. (*Id.* at ¶¶ 16–17.) Each sheet "necessarily originated from a native CAD drawing file opened and printed in the CAD application"; "[t]here is no other mechanism in Solidworks or any comparable system by which such a sheet can be produced." (*Id*. at ¶ 17.) Four features on the faces of the sheets prove where they came from.

1. **The drawing apparatus.** Each sheet displays what the expert calls "the drawing apparatus": "multiple model-derived views, section/detail views, associative dimensions and tolerances, a formatted title block, and (on the assemblies) an auto-generated BOM." (*Id*. at ¶ 17.)

2. **The author.** The title blocks repeatedly identify the drafter as "K.Rand"—Kenneth Randall, the Scott Pilling Defendants' lead engineer, who uses SolidWorks "on a daily basis." (*See generally* Smith Sanctions Decl. Ex. B; Dkt. 131-3, Decl. of Kenneth Randall (Mar. 11, 2026) ("**Randall Decl**.") at ¶ 2.) For each sheet that names a drafter, "the native drawing file was created by the individual named in the title block." (Smith Sanctions Decl. at ¶ 19.)

3. **The dates.** The Scanned Prints frequently bear a drawing date on their face. For each such sheet, the native drawing file "existed no later than the date printed on the sheet's face." (Smith Sanctions Decl. at ¶ 19; *see generally id.* Ex. B.)

4. **The upstream files.** The drawing files in turn "presuppose native model files": because a drawing file "contains no independent geometry" and instead references a part (.sldprt)

or assembly (.sldasm) model, "each drawing file that produced a Scanned Print necessarily was accompanied by the native model file(s) it referenced." (Smith Sanctions Decl. at ¶ 18.) Given the volume of assembly and part files the Scott Pilling Defendants did produce, the Scanned Prints are only the tip of the iceberg of the drawing files concealed or destroyed.

The Scott Pilling Defendants' own native production supplies the final proof. Amid the part and assembly files they produced sits exactly one SolidWorks drawing file—SP&E 23154.slddrw. (Smith Sanctions Decl. at ¶ 9.) It will not open properly because of a file-naming issue, but its SolidWorks preview matches one of the assembly PDFs the Scott Pilling Defendants produced. (*Id*. at ¶ 8 & n.4 (SP&E 23263–23343 at 6), ¶¶ 9-10.) That one broken file confirms that drawing files existed in the Scott Pilling Defendants' SolidWorks environment and that the claim that none could be located cannot be squared with the one they produced. Against that lone file stand "literally hundreds of pages of scanned printouts of drawing files bearing the hallmarks of having originated with a Solidworks drawing (.slddrw) file." (*Id*. at ¶ 11, Ex. B.)

The Scott Pilling Defendants' statements through counsel—that no native drawing files could be located and that the Native-Format Order had been satisfied—were false when made.

The sequence matters. When the Scott Pilling Defendants produced the Scanned Prints, they knew which drawings the sheets depicted and where the native files lived. When the Court later ordered the native files produced, they did not claim confusion about which files were meant; they claimed the files could not be located—with their own prior production already in the record, proving the opposite. When SRM's counsel pointed to the prior "production of numerous PDF schematics and drawings at various points during this lawsuit" and explained that those documents "demonstrate possession of the .slddrw (or equivalent) digital file," the Scott Pilling Defendants held to their denial. (Counsel Sanctions Decl. Exs. B, C)

Only one alternative remains, and it is worse: that the native drawing files existed when the prints were made and were deleted afterward. A legitimately operating manufacturer does not discard the originals of drawings it is still printing, revising, and using to produce parts. And any deletion after the preservation duty attached converts the denial of possession into a confession of spoliation, for which Rule 37(e)(2) supplies the same adverse-inference remedy this motion seeks. Concealment or destruction—either way, the sanctions requested below follow.

**V. The design story migrates from "independent" to "identical," and Scott Pilling swears falsely.**

The concealment or destruction proven above is reason enough for the relief this motion seeks. But it is not a one-off. The record on the parties' other contested motions shows a pattern of falsehoods and shifting narratives.

Their own sworn statements confirm both the copying and the shifting story. In November 2024, Randall stated that he was "aware of some instances … in which IIOVIII referenced or used old drawings, prints, or parts left in the shop at the Paul Facility on a limited basis as a starting point for product designs." (Dkt. 75-3, Decl. of Kenneth Randall ISO Resp. to SRM's Mot. for Prelim. Inj. (Nov. 4, 2024) ("**Randall PI Decl**.") at ¶ 14.) In May 2025, Randall "clarif[ied]" that he meant "situations where IIOVIII manufactured replacement parts specific to Kodiak machines" but admitted that "[i]n designing the Sawtooth L40 prototype at issue in this case, IIOVIII reverse engineered four main components using purchased Kodiak parts." (Dkt 107-2, Decl. of Kenneth Randall (May 16, 2025) ("**May 16 Randall Decl**.") at ¶¶ 3, 8.) Yet that same month Scott insisted that IIOVIII's machines are "designed independently from the ground up as new products" (Dkt. 94-3, Decl. of Scott Pilling (May 5, 2025) ("**Pilling Decl.**") at ¶ 7), and that IIOVIII had designed a new product "unlike anything else on the market." (Dkt. 107-1, Decl. of Scott Pilling (May 16, 2025) at ¶ 19.).

By March 2026, Randall conceded outright: "The goal of reverse engineering is to create identical dimensions," producing "an exact replacement with identical dimensions and tolerances"—and that the SolidWorks "convert entities" method leaves a copied part with "no real way to distinguish [it] from one that was created on the same day from scratch." (*See* Dkt. 131-3, Randall Decl. at ¶¶ 6, 8, 10.)

SRM's engineering expert David Smith found none of the objective hallmarks that a genuine reverse-engineering effort produces. (Dkt. 96-4, Decl. of David G Smith ISO TRO (May 7, 2025) ("**Smith TRO Decl**.") at ¶ 12; Dkt. 111-1, Second Decl. of David G Smith ISO Order to Show Cause on Contempt (May 30, 2025) ("**Smith Contempt Decl**.") at ¶¶ 8, 19.) He explained that a design cannot be both "designed from the ground up" and "reverse engineered," and opined that the L40 "originated from SRM proprietary designs." (Dkt. 111-1, Smith Contempt Decl. at ¶¶ 7, 21.) Kameron Bolster, one of SRM's former design engineer, examining the limited native files SRM has obtained, found hand-placed dimension labels "exactly mirroring" SRM's, gearboxes matching SRM's "out to three decimal places," and part-creation times matching "down to the exact second"—and concluded the Scott Pilling Defendants "copied SRM's designs through access to both 3D SolidWorks files and physical or electronic copies of SRM's schematics or drawings." (Dkt. 130-1, Decl. of Kameron Bolster (Feb. 25, 2026) ("**Bolster Decl**.") at ¶¶ 2-3, 20, 22, 26-27.)

Scott Pilling's candor fares no better. In granting the preliminary injunction, this Court walked through "Scott's misrepresentations" to the National Park Service by which he procured a machine under "false pretenses" (Dkt. 87, PI Order at p. 9), conduct it called "particularly egregious," including representations that were "blatantly false." (*Id.* at p. 19.) Two more examples merit mention.

First, Scott Pilling declared under penalty of perjury that a quote SRM attributed to him "appear[ed] to be fabricated." (Dkt. 94-3, Pilling Decl. at ¶ 20; Dkt. 96, SRM's Reply Mem. ISO TRO (May 7, 2025) ("**Reply ISO TRO**") at p. 3) It was not. He had authored and sent the quote himself; the date discrepancy he exploited was an auto-updating spreadsheet formula that rewrote the displayed dates whenever the file was opened. (Dkt. 96, Reply ISO TRO at p. 3; Dkt. 96-1, Declaration of Counsel (May 7, 2025) ("**Counsel TRO Decl**.") at ¶¶ 3-10, Exs. A-E.)

Second, in his February 4, 2026 declaration on reconsideration, Scott attested that he "never administered or controlled" SRM's public Facebook page and had "no idea how [his] personal cell phone number ended up on SRM's public Facebook page," which "could have only happened after [his] resignation." (Dkt. 127-2, Decl. of Scott Pilling ISO Mot. for Recons. (Feb. 4, 2026) ("**Pilling Recons. Decl.**") at ¶ 6.) Both statements were demonstrably false. The page's third-party administrator, Wesley Dalton, showed Scott Pilling having "administrator-level access to the Page from March 2020, when the Page was created, until January 23, 2024 . . . ." (Dkt. 130-3, Decl. of Wesley Dalton (Feb. 25, 2026) ("**Dalton Decl**.") at ¶ 4, Ex. A.) And Mr. Dalton attested that he had not added Scott Pilling's cell phone to the page, nor did he "ever create a WhatsApp Action Button using" Scott Pilling's cell phone. (*Id.* at ¶ 7.)

## VI. The schedule has no room left for a do-over.

This case was filed in 2024 and is on its fourth amended schedule. Fact discovery closes January 29, 2027; SRM must disclose its trial experts by March 15, 2027; and dispositive motions are due July 1, 2027—a deadline the Court has stated, "absent good cause, will not be extended even if you are having discovery disputes." (Dkt. 157, Sched. Order at ¶¶ 1, 6-7.) Running out the clock is not a misfortune that befell the Scott Pilling Defendants; it is the litigation strategy their misconduct served.

## VII. SRM tried to resolve this without the Court.

In compliance with District of Idaho Local Civil Rule 37.1 and the discovery-dispute procedures established by Magistrate Judge Grasham (Dkt. 157, Sched. Order at ¶ 11.), counsel met and conferred over months regarding the Scott Pilling Defendants' compliance with the Native-Format Order. SRM walked the Scott Pilling Defendants through the expert's proof that the native drawing files exist and asked for compliance. They refused and maintained that their production was fulsome. This motion followed.

## LEGAL STANDARD

When a party "fails to obey an order to provide or permit discovery," Rule 37(b)(2)(A) authorizes "further just orders," including directing that designated facts "be taken as established for purposes of the action," "prohibiting the disobedient party from supporting or opposing designated claims or defenses," striking pleadings, and entering default. An award of the movant's reasonable expenses, including attorney's fees, is mandatory unless the failure was substantially justified or an award would be unjust. Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(a)(5)(A). And if electronically stored information that should have been preserved is lost and cannot be restored, Rule 37(e)(2) authorizes an adverse-inference presumption on a finding that the party "acted with the intent to deprive another party of the information's use in the litigation."

Independent of the rules, courts possess inherent power to sanction—up to dismissal—"when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). "Falsifying evidence is grounds for the imposition of the sanction of dismissal," and the court's inherent powers "can be called upon to redress such mendacity." *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991). Monetary sanctions under the inherent power are likewise

available for bad-faith litigation conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017); *Am. Career Coll., Inc. v. Medina*, 673 F. Supp. 3d 1139, 1152 (C.D. Cal. 2023).

For case-dispositive sanctions, the Ninth Circuit weighs five factors: (1) the public's interest in expeditious resolution; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the policy favoring merits disposition; and (5) the availability of less drastic sanctions. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). "[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)); *accord Am. Career Coll.*, 673 F. Supp. 3d at 1150. Prejudice turns on whether the misconduct "threaten[s] to interfere with the rightful decision of the case," *Adriana*, 913 F.2d at 1412; *see Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998), and "the most critical factor is not merely delay or docket management concerns, but truth," because "[t]here is no point to a lawsuit, if it merely applies law to lies." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (quoting *Valley Eng'rs*, 158 F.3d at 1058).

## ARGUMENT

### I. The Scott Pilling Defendants violated the Native-Format Order—and their own Scanned Prints prove the native files exist.

The Native-Format Order could not be clearer: produce, within 30 days, the design schematics developed since January 2021, "in their native SolidWorks program format," with feature trees functioning. (Dkt. 121, Native-Format Order at p. 1.) "Disagreement with the court is not an excuse for failing to comply with court orders." *Adriana*, 913 F.2d at 1411. The Scott Pilling Defendants did not comply. They produced not one working .slddrw file. Their counsel instead asserted that after "a diligent search, no .slddrw SolidWorks files or their equivalents in

another program were located"—and that the order had been satisfied. (Counsel Sanctions Decl. at ¶¶ 7, 9 and Ex. A, C.)

As shown above, their own production disproves that assertion: months before the order, they produced scanned prints of the very files they now claim cannot be located. An evasive or incomplete response "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). That is a violation of a discovery order, full stop.

## II. The violation is willful, fits a pattern, and threatens the rightful decision of this case.

### A. The conduct is willful.

Willfulness requires only "[d]isobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (quoting *Fjelstad*, 762 F.2d at 1341); *accord Am. Career Coll.*, 673 F. Supp. 3d at 1150. Nothing here was outside the Scott Pilling Defendants' control. Confronted with their own prior production of printed drawing files, they doubled down. (Counsel Sanctions Decl. at ¶¶ 6-10, Exs. A-C.) Providing "false or incomplete information . . . in response to a discovery request" is bad-faith conduct, *Am. Career Coll.*, 673 F. Supp. 3d at 1150, and concealment of responsive documents is its hallmark. *See Anheuser-Busch*, 69 F.3d at 354; *Conn. Gen.*, 482 F.3d at 1095.

Nor is this an isolated event; courts "look at all incidents of a party's misconduct." *Adriana*, 913 F.2d at 1411. Here, incidents compound: a 2,313-page production against 70,387; false assurances exposed by third-party subpoenas; a machine shipped out of state after the Court was told it had no buyer; and now a false claim that the ordered drawing files do not exist. (Dkt. 120, Disc. Overview at p. 6–7; Dkt. 117, Compel Order at p. 2; Dkt. 103-1, Compel Mem. at p. 3–4.) This is "avoidance, not compliance," with discovery obligations. *Conn. Gen.*, 482 F.3d at 1095.

### B. The withholding threatens the rightful decision of the case—on the merits and on the calendar.

Prejudice asks whether the misconduct "threaten[s] to interfere with the rightful decision of the case," and "[f]ailure to produce documents as ordered . . . is considered sufficient prejudice." *Adriana*, 913 F.2d at 1412 (citing *SEC v. Seaboard Corp.*, 666 F.2d 414, 417 (9th Cir. 1982)). The threat here is acute twice over. First, the withheld files are the case: whether the Scott Pilling Defendants copied SRM's trade secrets is the central merits question and the heart of the pending contempt dispute, and the native files are the objective record that answers it. By withholding the natives, the Scott Pilling Defendants force SRM and the Court "to rely on incomplete and spotty evidence." *Anheuser-Busch*, 69 F.3d at 354.

Second, the clock. Fact discovery closes January 29, 2027; SRM's expert disclosures—which must present the copying analysis that depends on the native files—are due March 15, 2027; and the July 1, 2027 dispositive-motion deadline "absent good cause, will not be extended." (Dkt. 157, Sched. Order at ¶¶ 1, 6-7.) Delay alone may not warrant default, *Adriana*, 913 F.2d at 1412, but this is a court-ordered production withheld behind a false denial, by parties whose conduct has already helped force four amended scheduling orders. Another chance to retract and produce would stack delay on delay.

The law presumes the worst from concealment: "where documents relevant to the merits of the litigation have been concealed the deception casts doubt on the concealing party's case." *Anheuser-Busch*, 69 F.3d at 354. The Supreme Court has long recognized "the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 709 (1982) (quoting *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909)). This pattern makes it "impossible for a court to be confident that the parties will ever have access

to the true facts." *Valley Eng'rs*, 158 F.3d at 1058. The Ninth Circuit affirmed dismissal there for just such a "pattern of deception and discovery abuse." *Id.* The pattern here is the same.

### III. Scott Pilling's false declaration and the shifting design story independently warrant inherent-power sanctions.

The inherent power reaches deliberate "deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *accord Yu v. ByteDance Inc.*, 759 F. Supp. 3d 992, 999 (N.D. Cal. 2024) (quoting *Leon*); *Anheuser-Busch*, 69 F.3d at 348. "Falsifying evidence is grounds for the imposition of the sanction of dismissal." *Combs*, 927 F.2d at 488. Scott Pilling supplied exactly that: he swore that a quotation SRM attributed to him "appear[ed] to be fabricated," when he had generated and sent the quotation himself. (Dkt. 94-3, Pilling Decl. at ¶ 20; Dkt. 96, Reply ISO TRO at p. 3; Dkt. 96-1, Counsel TRO Decl. at ¶¶ 3-10, Exs. A-E.) "Falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." *Yu*, 759 F. Supp. 3d at 1001 (quoting *Martin v. Domino's Pizza*, No. 2:22-cv-00784-GMN-DJA, 2023 WL 7461882, at *5 (D. Nev. Nov. 9, 2023)). As SRM asked then, if Scott Pilling will swear to a fact he knows to be false, what basis is there to credit his account of the design process? (Dkt. 96, Reply ISO TRO at p. 4.)

The Scott Pilling Defendants' design story shows the same disregard for candor. A story that moves from "independent" to "identical" as the evidence closes in is a moving target that has frustrated SRM's ability to conduct discovery on the central issue. *Cf. Yu*, 759 F. Supp. 3d at 1001.

And these are not the only proven lies. This Court has already found that Scott Pilling obtained the Lassen Volcanic machine through "misrepresentations" it called "particularly egregious" and "blatantly false." (Dkt. 87, PI Order at p. 9, 19.) And his sworn denial that he ever

administered SRM's Facebook page (Dkt. 127-2, Pilling Recons. Decl. at ¶ 6) was disproved by the page administrator's records. (Dkt. 130-3, Dalton Decl. at ¶ 4, Ex. A.)

Each incident follows the same arc: a confident sworn statement, then documentary proof of its falsity, then no correction. This pattern of deceit independently justifies sanctions.

## IV. The remedy must fit the record and the calendar: deemed facts, a mandatory adverse inference, and preclusion.

### A. Process remedies would reward the delay.

Because a court order has been violated, the first two *Adriana* factors support sanctions and the fourth cuts against default, so "the third and fifth factors . . . are decisive." 913 F.2d at 1412. The remedies that require further process—a third production order, a court-supervised forensic examination, a special master—would consume the months that remain before the discovery cutoff and dispositive-motion deadline, and would depend on the cooperation of parties whose certifications have already proved false. Two court orders and a year of assurances have produced only shifting false statements culminating in a demonstrably false denial. A third order would invite a fourth failed performance. "It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Anheuser-Busch*, 69 F.3d at 352. And because belated compliance would not purge the violation in any event, *id.* at 354, nothing is gained—and the schedule is lost—by ordering it.

The sanctions SRM seeks are the calibrated, less-drastic alternative on a record that would support terminating sanctions. Default was affirmed in *Connecticut General* for years of evasion, in *Anheuser-Busch* for concealing documents and lying under oath, in *Combs* for falsified testimony, and in *Yu* for a perjurious declaration. 482 F.3d at 1097; 69 F.3d at 348; 927 F.2d at 488; 759 F. Supp. 3d at 1002. But SRM seeks only issue-specific sanctions: the case still goes to the jury, on a record in which the concealed evidence is treated as what the law presumes it to be.

*See Adriana*, 913 F.2d at 1412 (before imposing case-dispositive sanctions, courts weigh the availability of less drastic ones).

**B. The Court should deem the key facts established and instruct the jury with a mandatory adverse inference.**

Under Rule 37(b)(2)(A)(i), the Court should deem established for all purposes: (1) that native SolidWorks files—including the .slddrw drawing files—corresponding to each snow blower model the Scott Pilling Defendants claim to have independently developed (or reverse engineered) existed in their possession at all relevant times; and (2) that those native files reflect that the Scott Pilling Defendants' designs were copied from or derived from SRM's proprietary designs. The first proposition is proven by the Scanned Prints themselves—and by the one (non-working) .slddrw file they produced. (Smith Sanctions Decl. at ¶¶ 9–11, 17–19, Ex. B.) The second is what the law presumes from the concealment: "Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987); *accord Ins. Corp. of Ir.*, 456 U.S. at 709 (the *Hammond Packing* presumption).

In the alternative, the Court should instruct the jury—in mandatory rather than permissive terms—that the withheld native files are presumed to show that the Scott Pilling Defendants' designs were copied from SRM's. And if the native files were destroyed rather than concealed, Rule 37(e)(2) supplies the same presumption on a finding that they acted with "the intent to deprive." That intent "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party," and it may be proven circumstantially—by timing, by affirmative steps taken to delete, and by selective preservation. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (affirming dismissal under Rule

37(e)(2)). The record fits that template: drawing files that indisputably existed, and selective survival of the part and assembly files but not the drawing files that reveal design provenance.

### C. The Court should preclude the independent-design story the withheld files would have tested.

Under Rule 37(b)(2)(A)(ii), the Court should prohibit the Scott Pilling Defendants from offering testimony, exhibits, expert opinion, or argument that their machines were independently designed, and from asserting that the native drawing files do not exist or were never in their possession. A party may not withhold the objective record and then fill the gap with the self-serving narrative the record would have impeached; the Supreme Court treats such a refusal as "an admission of the want of merit in the asserted defense." *Ins. Corp. of Ir.*, 456 U.S. at 709 (quoting *Hammond Packing*, 212 U.S. at 351).

## V. The fee award is mandatory.

The Court must order the Scott Pilling Defendants to pay SRM's reasonable expenses—attorney's fees and the forensic and expert costs—incurred because of the noncompliance. The award is mandatory under Rule 37(b)(2)(C) unless the failure was substantially justified or an award would be unjust—a false denial of possession, contradicted by the denier's own production, is neither. Rule 37(a)(5)(A) independently requires the party "whose conduct necessitated the motion" to pay the movant's expenses, *id.*, and monetary sanctions are equally available under the inherent power. *Goodyear*, 581 U.S. at 108–09, 111 (award reaches all fees that "would not have been incurred but for" the misconduct); *Am. Career Coll.*, 673 F. Supp. 3d at 1152. SRM requests its fees for the effort to secure production of the native files, including those expended in obtaining the original order compelling production.

**VI. Belated production will not purge the violation, and terminating sanctions are expressly reserved.**

Two additional points should be included in the Court's order. First, any production the Scott Pilling Defendants make after this motion does not purge the violation or displace the sanctions. "Belated compliance with discovery orders does not preclude the imposition of sanctions." *Henry*, 983 F.2d at 947 (quoting *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)); *accord Anheuser-Busch*, 69 F.3d at 354 (the Ninth Circuit has "squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance").

Second, the Court should be clear that continued defiance—or proof that the native files were destroyed—will bring terminating sanctions. No more advance warning of the specific sanction is required, because "everyone has notice from the text of" Rule 37(b)(2) that dismissal is available, *Valley Eng'rs*, 158 F.3d at 1056. Still, SRM reserves the right to seek default if the misconduct continues.

**CONCLUSION**

The Scott Pilling Defendants were ordered to produce their designs in native SolidWorks format. They produced one broken drawing file and claimed no others could be located—months after producing scanned prints of hundreds of pages of those very drawings, purportedly drawn by their own engineer on dates their own title blocks record. Drawings do not draw themselves. SRM respectfully requests that the Court: (1) deem established, under Rule 37(b)(2)(A)(i), that the native SolidWorks files corresponding to the Sawtooth snow blowers existed in the Scott Pilling Defendants' possession at all relevant times and that those files reflect that their designs were copied from or derived from SRM's; (2) in the alternative, instruct the jury in mandatory terms—under Rule 37(b)(2) and, as applicable, Rule 37(e)(2)—that the withheld files are presumed to

show copying; (3) preclude the Scott Pilling Defendants, under Rule 37(b)(2)(A)(ii), from offering evidence or argument of independent design or that the native drawing files do not exist; (4) award SRM its reasonable attorney's fees and forensic and expert costs, under Rules 37(a)(5)(A) and 37(b)(2)(C) and the Court's inherent power; and (5) order that belated production will not purge the violation, and grant such further relief as the Court deems just—including terminating sanctions, which SRM expressly reserves the right to seek if the defiance continues.

DATED October 12, 2026.

PARSONS BEHLE & LATIMER

*/s/ John E. Cutler*
Lee Radford
John E. Cutler
Daniel Biddulph

*Attorneys for SRM-Kodiak America, LLC; Lawrence Wayne Powell, Jr.; Kurt Harman; Jonathan Price; and Kodiak America, LLC (Texas)*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on the date given below, s/he caused to be served a copy of the foregoing *Memorandum in Support of Plaintiff's Motion for Discovery Sanctions Against the Scott Pilling Defendants* upon the following persons by the method of service indicated below:

Bren Mollerup
BENOIT, MOLLERUP, DANIELSON & GRIEVE, PLLC
P.O. Box 366
Twin Falls, ID 83303
*Attorneys for Defendant Carolyn Shoemaker*

[x] CM/ECF
benoitlaw@benoitlaw.com
messinger@benoitlaw.com
mollerup@benoitlaw.com

David W. Gadd
STOVER GADD & ASSOCIATES, PLLC
905 Shoshone St. N.
P.O. Box 1428
Twin Falls, ID 83303-1428
*Attorneys for Defendants Brek Pilling, Kodiak America, LLC, Baub, LLC, Kodiak Northwest, Inc., PFT Enviro Investments, LLC, and Brek Pilling as Trustee of the Pilling Family Trust*

[x] CM/ECF
dwg@magicvalleylaw.com

Mark O. Morris
Tara Martens Miller
Benjamin J. Mills
SNELL & WILMER, LLP
Key Business Center
702 W. Idaho Street, Ste 1100
Boise, ID 83702
*Attorneys for Defendants Brek Pilling, Kodiak America, LLC, Baub, LLC, Kodiak Northwest, Inc., PFT Enviro Investments, LLC, and Brek Pilling as Trustee of the Pilling Family Trust*

[x] CM/ECF
mmorris@swlaw.com
tmmiller@swlaw.com
bemills@swlaw.com

Peter M. Wells
MAY, RAMMELL & WELLS, CHARTERED
216 W. Whitman
PO Box 370
Pocatello, ID 83204-0370
*Attorneys for Defendant Gary Wickersham*

[x] CM/ECF
pete@mrwlaw.net

Kyle Eric Bastian
WRIGHT BROTHERS LAW OFFICE, PLLC
P.O. Box 5678
Twin Falls, ID 83303
*Attorneys for Defendants Scott Pilling, IIOVIII Precision, LLC, Sawtooth Industrial, LLC, and Intermountain Living, LLC*

[x] CM/ECF
kbastian@wrightbrotherslaw.com

Brian L. Tibbets
1411 23rd Street
Ogden, UT 84401
*Counterdefendant Pro Se*

[x] Email
btibbets@gmail.com

DATED October 12, 2026.

*/s/ Daniel Biddulph*
Lee Radford
John E. Cutler
Daniel Biddulph